UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
BRAVE BULK TRANSPORT LTD.,                        **07 Civ. 4546 (CM)**


                          Plaintiff,


         -against-


SPOT ON SHIPPING LTD., a.k.a. SPOT
ON SHIPPING LTD. BVI, a.k.a. SPOT ON,
a.k.a. CLAYTON STAR COMPANY LIMITED
a.k.a. CLAYTON STAR and PHEW ASSET
MANAGEMENT LIMITED a.k.a. PEHW ASSET
MANAGEMENT LTD. and ZHANGGANG SHIPPING
LIMITED,


                          Defendant.
----------------------------------------X




                    **MEMORANDUM OF LAW
                  IN SUPPORT OF MOTION**




Edward A. Keane (EK 1398)
Garth S. Wolfson (GW 7700)

     Of Counsel




                    **MAHONEY & KEANE, LLP
                    Attorneys for Defendant
                ZHANGGANG SHIPPING LIMITED
                111 Broadway, Tenth Floor
                New York, New York 10006
                    (212) 385-1422**

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES.............................................ii

STATEMENT OF FACTS................................................1

ARGUMENT..........................................................1

PRELIMINARY STATEMENT.............................................1

POINT I.      THE ATTACHMENT SHOULD BE VACATED ON THE
              GROUND THAT THE FFA IS NOT A MARITIME
              CONTRACT............................................2

POINT II.     THE ATTACHMENT SHOULD BE VACATED ON THE
              GROUND THAT PLAINTIFF HAS FAILED TO
              PRESENT FACTS SUFFICIENT TO SUPPORT THE
              ALLEGATION THAT ZSL'S IS AN "ALTER-EGO"
              OF THE CONTRACTING PARTY............................5

CONCLUSION........................................................8

## TABLE OF AUTHORITIES

*Page*

*Cases:*

Aston Agro-Indus. AG v. Star Grain Ltd.,
No. 06 Civ. 2805 (GBD),
2006 U.S. Dist. LEXIS 91636 (S.D.N.Y. Dec. 20, 2006)......2

Atwood Navigation, Inc. v. M/V Rizal, No. 89-1221,
1989 U.S. Dist. LEXIS 1828 (E.D. Pa. Feb. 24, 1989)........6

Dolco Investments, Ltd. v. Moon river Development, Ltd.,
No. 06 Civ. 12876 (RWS),
2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. Apr. 26, 2007)......5

Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.,
782 F.2d 329 (2d Cir. 1986)...............................5

Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH,
409 F. Supp. 2d 427 (S.D.N.Y. 2006)......................3

Exxon Corp. v. Central Gulf Lines, Inc.,
500 U.S. 603 (1991)......................................2

Fednav, Ltd. v. Isoramar, S.A.,
925 F.2d 599 (2d Cir. 1991)..............................3

In re: Interbulk, Ltd. v. Louis Dreyfus Corp.,
No. 97-44202 (TLB), 240 B.R. 195,
1999 Bankr. LEXIS 1336 (Bankr. S.D.N.Y. 1999)............3

International Marine Consultants, Inc. v. Captain A.
Karavias, No. 82 Civ. 8296 (CMM),
1985 U.S. Dist. LEXIS 19272 (S.D.N.Y. Jun. 3, 1985)........6

Kirno Hill Corp. v. Holt,
618 F.2d 982 (2d Cir. 1980)..............................5

Maritima Petroleo e Engenharia Ltda v. Ocean Rig 1 AS,
78 F. Supp. 2d 162 (S.D.N.Y. 1999).......................2

Norfolk Southern Ry. Co. v. Kirby,
543 U.S. 14 (2004).......................................2

_P.R. Ports Auth. V. Barge Katy-B_,
427 F.3d 93 (1st Cir. 2005).................................5

_Peralta Shipping Corp. v. Smith & Johnson Shipping Corp._,
739 F.2d 798 (2d Cir. 1984)................................3

_Setsea S.P.A. v. Source Link Shipping Co. Ltd._,
No. 07 Civ 4147 (DAB) (S.D.N.Y. Jun. 5, 2007).........3,4

_Status Int'l S.A. v. M/V Esperanza C_,
994 F. Supp. 182 (S.D.N.Y. 1998)..........................5

_Stevedoring Serv's of Am. v. Ancora Transp., N.V._,
59 F.3d 879 (9th Cir. 1995)................................6

_Ullises Shipping Corp. v. FAL Shipping Co._,
No. 05 Civ 9424 (SAS),
2006 U.S. Dist. LEXIS 2283 (S.D.N.Y. Jan. 20, 2006).......6

_Winter Sorm Shipping, Ltd. v. TPI_,
310 F.3d 263 (2d Cir. 2002)...............................2

**_Statutes and Rules:_**

28 U.S.C. § 1333.........................................2

Fed. R. Civ. P. 12(h)(3).................................4

Fed. R. Civ. P. B......................................1,2

Fed. R. Civ. P. E(2)(a)..................................5

Fed. R. Civ. P. E(4)(f)..............................1,7,8

Local Admiralty Rule E.1.................................1

**_Treatises:_**

T.J. Schoenbaum,
_Admiralty and Maritime Law_ (4th ed., West 2004)............3

## STATEMENT OF FACTS

For an accurate statement of the pertinent facts, the Court is respectfully referred to the Declaration of Zhang Jinglu executed on August 22, 2007.

## ARGUMENT

**PRELIMINARY STATEMENT.**

After attaching property under Rule B, "plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Fed. R. Civ. P. E(4)(f). "The plaintiff has the burden of showing why the seizure should not be vacated." Fed. R. Civ. P. E advisory committee's note.

To comply with constitutional due process, the hearing must be "prompt." Id. Accordingly, "[t]he adversary hearing following arrest or attachment or garnishment that is called for in supplemental Rule E(4)(f) shall be conducted within three (3) court days, unless otherwise ordered." Local Admiralty Rule E.1.

Defendant ZHANGGANG SHIPPING LIMITED (ZSL) respectfully submits that the papers which caused the writ of maritime attachment and garnishment in this case to be issued are prima facie deficient, and the order of attachment should be vacated, accordingly.

1

**POINT I.          THE ATTACHMENT SHOULD BE VACATED ON THE GROUND
                    THAT THE FFA IS NOT A MARITIME CONTRACT.**

"Absent the requisite admiralty or maritime jurisdiction, a
*Rule B* maritime attachment is void." Aston Agro-Indus. AG v.
Star Grain Ltd., No. 06 Civ. 2805 (GBD), 2006 U.S. Dist. LEXIS
91636, **7-9 (S.D.N.Y. Dec. 20, 2006) ("In this case, the
contracts are not maritime contracts because their primary
objective was not the transportation of goods by sea."); see
also, Winter Sorm Shipping, Ltd. v. TPI, 310 F.3d 263, 268 (2d
Cir. 2002) ("[T]he plaintiff's claim must be one which will
support a finding of admiralty jurisdiction under *28 U.S.C.* §
*1333.*"); Maritima Petroleo e Engenharia Ltda v. Ocean Rig 1 AS,
78 F. Supp. 2d 162, 172 (S.D.N.Y. 1999) ("Because of the absence
of subject matter jurisdiction . . . the maritime attachment is
vacated.").

In determining whether a contract is "maritime" so as to
support admiralty jurisdiction, a court must look to "the subject
matter of the . . . contract" and "the services performed under
the contract." Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S.
603, 612 (1991); see also, Norfolk Southern Ry. Co. v. Kirby, 543
U.S. 14, 24 (2004) (holding bills of lading to be maritime
contracts "because their primary objective [wa]s to accomplish
the transportation of goods by sea from Australia to the eastern
coast of the United States."). "[T]he subject matter of the
contract must be directly and intimately related to the operation
of a vessel and navigation; it is not enough that the contract

2

relate in some preliminary (shoreside) manner to maritime affairs." T.J. Schoenbaum, <u>Admiralty and Maritime Law</u> § 3-10 at 131 (4th ed., West 2004); <u>see also</u>, <u>Fednav, Ltd. v. Isoramar, S.A.</u>, 925 F.2d 599 (2d Cir. 1991) (agreement to act as surety for another's breach of charter party is non-maritime); <u>Peralta Shipping Corp. v. Smith & Johnson Shipping Corp.</u>, 739 F.2d 798, 802 (2d Cir. 1984) ("[N]either an agreement to procure insurance, or crews, nor an undertaking to act as broker in securing cargo, or a charter party, have been cognizable in admiralty.").

A forward freight agreement (FFA) is "essentially a derivatives contract" whereby a party attempts "to insulate itself from market fluctuations in freight rates for future shipments during the covered period." <u>Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH & Co.</u>, 409 F. Supp. 2d 427, 430 (S.D.N.Y. 2006); <u>see also</u>, <u>In re: Interbulk, Ltd. v. Louis Dreyfus Corp.</u>, No. 97-44202 (TLB), 240 B.R. 195, 1999 Bankr. LEXIS 1336 (Bankr. S.D.N.Y. 1999) ("[T]he FFA's essentially swap freight rates at a future date based on the changes of an index.").

Only one known decision has addressed the issue of whether an FFA may qualify as a "maritime contract." <u>See</u> <u>Setsea S.P.A. v. Source Link Shipping Co. Ltd.</u>, No. 07 Civ. 4147 (DAB) (S.D.N.Y. Jun. 5, 2007) (copy attached). And that opinion emphatically held that it does not.

3

> The Court finds that the Agreements, when signed, related to reciprocal future promises of payment in cash and that they do not address maritime services or transactions such as the transportation of specific cargoes or the involvement of specific vessels. The Agreements merely seek to establish a means of minimizing financial risk and establishing a formula to make future costs and revenues more predictable. Plaintiff has therefore failed to establish that this Court has admiralty jurisdiction over the alleged breach of the Agreements. The Court accordingly DENIES Plaintiff's application for an Ex Parte Order for Process of Maritime Attachment and DISMISSES this action for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3).

Id. at 8.

In the case bar, plaintiff judicially admits that the writ of attachment was obtained to secure a foreign lawsuit to enforce this very type of FFA, pursuant to which "Defendant Spot On agreed to sell and buy freight futures with the Plaintiff." (Amended Complaint, Exhibit A to Zhang Declaration, at ¶¶ 8, 12). The FFA is no different than that in Setsea and is not even close to qualifying as a maritime contract which can support Rule B relief. As subject matter jurisdiction over this claim is plainly lacking, the attachment should vacated.

**POINT II.**        **THE ATTACHMENT SHOULD BE VACATED ON THE GROUND THAT PLAINTIFF HAS FAILED TO PRESENT FACTS SUFFICIENT TO SUPPORT THE ALLEGATION THAT ZSL'S IS AN "ALTER-EGO" OF THE CONTRACTING PARTY.**

"Piercing of the corporate veil" is only allowable where:

> (1) a corporation uses its alter ego to perpetrate a fraud or (2) where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own.

Status Int'l S.A. v. M/V Esperanza C, 994 F. Supp. 182, 186 (S.D.N.Y. 1998) (citing Dow Chem. Pac. Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 342 (2d Cir. 1986); Kirno Hill Corp. v. Holt, 618 F.2d 982, 984-85 (2d Cir. 1980)).

Moreover, Supplemental Rule E demands a level of "particularity" greater than that otherwise tolerated in a normal notice pleading. See Fed. R. Civ. P. E(2)(a); see also, P.R. Ports Auth. V. Barge Katy-B, 427 F.3d 93, 105 (1st Cir. 2005)("This heightened pleading standard is not some pettifogging technicality meant to trap the unwary, but, rather a legal rule designed to counterbalance the unique and drastic remedies that are available in in rem admiralty proceedings.")

Accordingly, a Rule B attachment of an alleged alter ego's property can not be sustained in the absence of a showing of at least some specific facts demonstrating the type of corporate domination and control sufficient to pierce the corporate veil. See, generally, Dolco Investments, Ltd. v. Moon river Development, Ltd., No. 06 Civ. 12876 (RWS), 2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. Apr. 26, 2007) ("Dolco fails to meet this burden

because it has not included any factual allegations that GML exercised complete domination over Moonriver. Other than the conclusory allegation of domination, the Complaint and the Amended Complaint both allege that GML paid Moonriver's debts to Dolco 'from time to time' . . . [M]ore is required."); see also, Stevedoring Serv's of Am. v. Ancora Transp., N.V., 59 F.3d 879, 883 (9th Cir. 1995) ("Armilla (London) introduced evidence that Ancora was the only party to the stevedoring contract with SSA and that Armilla (London), not Ancora, owned the funds in question. SSA offered little more than bare assertions that Armilla (London) was an alter ego of Ancora."); Ullises Shipping Corp. v. FAL Shipping Co., No. 05 Civ. 9424 (SAS), 2006 U.S. Dist. LEXIS 2283, *19 (S.D.N.Y. Jan. 20, 2006) ("Ullises provides no facts in support of its 'partner' and 'joint venturer' theories, nor does it present any evidence that the FAL defendants use one another as alter egos to perpetrate a fraud. Furthermore, with regard to FAL energy, the evidence Ullises presents falls short of creating reasonable grounds for attaching FAL Energy's assets. It is not sufficient that FAL Energy and other FAL Defendants share common ownership. Nor is it sufficient that FAL Energy does not observe some of the formalities of separate corporate existence."); Atwood Navigation, Inc. v. M/V Rizal, No. 89-1221, 1989 U.S. Dist. LEXIS 1828, *4 (E.D. Pa. Feb. 24, 1989) ("Plaintiff Atwood suggests that, in due time, it will show that the court should 'pierce the corporate veil' to reach defendant Shipping and Trading. This

proposition is offered without any support. I cannot conclude in light of the record that plaintiff has met its burden under Supplemental Rule E(4)(f)."); International Marine Consultants, Inc. v. Captain A. Karavias, No. 82 Civ. 8296 (CMM), 1985 U.S. Dist. LEXIS 19272, *14 (S.D.N.Y. Jun. 3, 1985) ("Plaintiff's allegation that Karavias used these corporations to insulate himself from liability is unsubstantiated.").

The Amended Complaint sub judice merely presents wholly conclusory allegations that ZSL was somehow an "alter ego" of SPOT ON SHIPPING LIMITED. (Amended Complaint, Exhibit A to Zhang Declaration, at ¶¶ 22-28). Simply no facts are outlined with the specificity required to sustain the drastic relief afforded by Rule B against a non-party to the subject contract. Id. Indeed, ZSL has now averred in no uncertain terms that no such "alter ego" relationship ever existed. Surely, the ex parte seizure of ZSL's property and the complete disruption of its operations can not be upheld on this record.

7

**CONCLUSION.**

WHEREFORE, ZSL urges the Court to grant the instant motion for an order, pursuant to Fed. R. Civ. Proc. E(4)(f), vacating, dissolving, and quashing the process of maritime attachment and garnishment issued pursuant to the Court's Amended <u>Ex Parte</u> Order dated July 9, 2007 and entered on July 10, 2007, and granting to ZSL such other and further relief as this Honorable Court may deem just and proper.

Dated:  New York, New York
        August 22, 2007

                              MAHONEY & KEANE, LLP
                              Attorneys for Defendant
                              ZHANGGANG SHIPPING LIMITED

                    By: _____
                              Edward A. Keane (EK 1398)
                              111 Broadway, Tenth Floor
                              New York, New York 10006
                              (212) 385-1422


TO:  TISDALE LAW OFFICES, LLC
     11 West 42nd Street, Suite 900
     New York, New York  10036
     Fax: (212) 869-0067

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
SETSEA S.P.A.,

                  Plaintiff,

      -against-

SOURCE LINK SHIPPING CO. LTD.,

                  Defendant.
------------------------------------X

07 Civ. 4147 (DAB)
ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/5/2007

DEBORAH A. BATTS, United States District Judge.

     Plaintiff Setsea S.p.A. brings this action against Defendant Source Link Shipping Co. Ltd. for damages and costs it sustained as a result of Defendant's alleged breach of two Forward Freight "Swap" Agreements. Plaintiff seeks an Order from the Court "directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims" against Defendant to secure Plaintiff's claims and so that the Court may obtain personal jurisdiction over Defendant. (Complaint ¶ 11.) Plaintiff alleges that the Court has subject matter jurisdiction over this matter because its claim regarding the alleged breach of the Forward Freight "Swap" Agreements constitutes "an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333." (Id. ¶ 1.) Plaintiff submitted a cover-letter dated May

29, 2007 in support of its application for an Ex Parte Order For
Process of Maritime Attachment against Defendant in which it
argued that "[w]hile there are no decisions in this or any other
Circuit that speak directly on whether a Forward Freight 'Swap'
Agreement or any other Freight Futures Contract is maritime,
these agreements have all the hallmarks of a maritime contract."[1]

Having considered Plaintiff's Complaint, the two Forward
Freight "Swap" Agreements that are the subject of the Complaint
and Plaintiff's application for an Ex Parte Order For Process of
Maritime Attachment, for the reasons set forth below, the Court
DENIES Plaintiff's application.  The Court finds that the Forward
Freight "Swap" Agreements that Defendant allegedly breached are
not maritime contracts and that therefore the Complaint alleging
their breach does not fall within the Court's original
jurisdiction over "[a]ny civil case of admiralty or maritime
jurisdiction," as provided by 28 U.S.C. § 1333(1).  Accordingly,
the Complaint is DISMISSED WITHOUT PREJUDICE.  See Fed. R. Civ.
P. 12(h)(3) ("[w]henever it appears by suggestion of the parties
or otherwise that the court lacks jurisdiction of the subject
matter, the court shall dismiss the action"); Steel Co. v.

---

[1]    At the Court's request, Plaintiff submitted copies of the
two Forward Freight "Swap" Agreements to Chambers.

2

<u>Citizens for Better Environment</u>, 523 U.S. 83, 94 (1998)

("'[w]ithout jurisdiction the court cannot proceed at all in any

cause'") (quoting <u>Ex parte McCardle</u>, 74 U.S. 506, 514 (1868)).[2]


BACKGROUND

Plaintiff alleges that Defendant agreed to "buy and sell

Freight Futures" with it pursuant to the two Forward Freight

"Swap" Agreements, dated December 13, 2006 and January 22, 2007

(the "Agreements"). (Complaint ¶ 4.) Plaintiff alleges that "a

dispute arose between the parties regarding Defendant's failure

to pay the losses sustained by it in breach of the Agreements"

and that it was thereby damaged "in the total principal amount of

$1,602,691.50." (<u>Id.</u> ¶¶ 5-6.)

The Complaint otherwise contains scant allegations regarding

the terms of the Agreements and of their subject matter. In

particular, the Complaint is vague as to the Agreements'

connection to maritime commerce. Plaintiff explains in its

cover-letter dated May 29, 2007, however, that the Agreements

"are commitments to perform in the future a shipping service

_____

[2]    While it would appear, based on the Complaint's allegations,
that the Court might have subject matter jurisdiction over this
matter pursuant to 28 U.S.C. § 1332, the lack of any allegations
regarding the Court's personal jurisdiction over Defendant
counsels in favor of dismissal without prejudice.

between ship owners, charterers and/or traders." Such agreements, according to Plaintiff's letter, are "negotiated with the express purpose of hedging and managing market risks relating to the employment of vessels in today's volatile freight market" and that the specific Agreements that Defendants allegedly breached were to "buy and sell a specified tonnage freight at an agreed price for an agreed route and time span so that both [Parties] could reliably predict their ocean freight revenues and costs for the duration of the contract for those ocean routes."

Having examined both Agreements, the Court notes that they are tied to maritime commerce in that they are dependant on averaged freight rates on international commercial freight routes, as assessed and published by the London-based Baltic Exchange in a variety of indices. The Agreements, for instance, contain provisions specifying "contract routes" which are defined as the to averaged routes of specified indices published by the Baltic Exchange. The Agreements do not, however, provide for the physical shipping or delivery of any specific freight tonnage or of any specific cargoes. Nor do they relate to the transportation of goods of any kind or to any specific vessels.

The Agreements specify a "contract rate" of several thousand dollars per day, along with a "contract quantity" term of ninety-one days on both Agreements, between April 2007 and June 2007. A

4

"settlement rate" which is also tied to Baltic Exchange indices is provided in each Agreement. The main obligation of the Parties to the Agreements is described in identical provisions entitled "Settlement Sum":

> The "Settlement Sum" is the difference between the Contract Rate and the Settlement Rate multiplied by the Contract Quantity. If the Settlement Rate is greater than the Contract Rate, the Seller shall pay the Buyer the Settlement Sum. If the Settlement Rate is less than the Contract Rate, the Buyer shall pay the Seller the Settlement Sum.

In both Agreements, Plaintiff was the buyer and Defendant was the seller. It is clear that the Parties agreed to settle their obligations under the Agreements in cash.

## DISCUSSION

Rule 12(h)(3) of the Federal Rules of Civil Procedure provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). When resolving issues surrounding subject matter jurisdiction, a district court is not confined to the complaint and may refer to evidence outside the pleadings. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)). Furthermore, "jurisdiction must be shown affirmatively, and that

5

showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Financial Services Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).

Title 28 U.S.C. § 1333(1) confers subject matter jurisdiction over actions between "[a]ny civil case of admiralty or maritime jurisdiction. . . ." 28 U.S.C. § 1333(1). Determining whether a contract is maritime and therefore gives rise to admiralty jurisdiction is difficult however. The Supreme Court has observed that federal case law has not drawn "clean lines between maritime and non-maritime contracts." Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd., 543 U.S. 14, 23 (2004); Kossick v. United Fruit Co., 365 U.S. 731, 735 (1961) ("[t]he boundaries of admiralty jurisdiction over contracts - as opposed to torts or crimes - being conceptual rather than spatial, have always been difficult to draw"); see also Ingersoll Milling Mach. Co. v. M/V Bodena, 829 F.2d 293, 301 (2d Cir. 1987) ("[t]he precise categorization of the contracts that warrant invocation of the federal courts' admiralty jurisdiction has proven particularly elusive" (quoting CTI-Container Leasing Corp. v. Oceanic Operations Corp., 682 F.2d 377, 379 (2d Cir. 1982)).

A court must look to "the subject matter of the . . . contract" and "the services performed under the contract" to determine whether it a maritime contract. Exxon Corp. v. Central

6

Gulf Lines, Inc., 500 U.S. 603, 612 (1991). "[T]he true

criterion is whether [the contract] has 'reference to maritime

service or maritime transactions.'" Norfolk S. Ry. Co., 543 U.S.

at 24 (quoting North Pacific S.S. Co. v. Hall Brothers Marine

Railway & Shipbuilding Co., 249 U.S. 119, 125 (1919)). In

addition, the Second Circuit has held that, as a threshold

matter, "[b]efore attempting to categorize contractual rights as

maritime or non-maritime, a federal court must first consider

whether an issue related to maritime interests has been raised."

Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd., 968 F.2d

196, 199 (2d Cir. 1992).[3] To grant an Ex Parte Order For Process

of Maritime Attachment, a court must first determine that "the

plaintiff's claim [is] one which will support a finding of

admiralty jurisdiction under 28 U.S.C. § 1333." Winter Storm

Shipping, Ltd. v. TPI, 310 F.3d 236, 268 (2d Cir. 2002) (citation

omitted).

    Turning to the Agreements presently before the Court, it is

clear that their subject matter is not "so attenuated from the

business of maritime commerce that it does not implicate the

---

[3]    The Second Circuit has, however, recently noted "some
uncertainty as to the extent to which this Court's 'threshold
inquiry' test survives the Supreme Court's most recent admiralty
decision, Norfolk Southern Railway Co. v. James N. Kirby Pty
Ltd." Folksamerica Reinsurance Co. v. Clean Water of New York,
Inc., 413 F.3d 307, 313 (2d Cir. 2005).

concerns underlying admiralty and maritime jurisdiction."

Atlantic Mut. Ins. Co., 968 F.2d at 200.  But while the

Agreements may pass the Second Circuit's "threshold inquiry" the

Court finds that they do not constitute maritime contracts

because, in their specific provisions, they lack "'reference to

maritime service or maritime transactions.'"  Norfolk S. Ry. Co.,

543 U.S. at 24 (citation omitted).  The Court finds that the

Agreements, when signed, related to reciprocal future promises of

payment in cash and that they do not address maritime services or

transactions such as the transportation of specific cargoes or

the involvement of specific vessels.  The Agreements merely seek

to establish a means of minimizing financial risk and

establishing a formula to make future costs and revenues more

predictable.  Plaintiff has therefore failed to establish that

this Court has admiralty jurisdiction over the alleged breach of

the Agreements.  The Court accordingly DENIES Plaintiff's

application for an Ex Parte Order For Process of Maritime

Attachment and DISMISSES this action for lack of subject matter

jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3).

### LEAVE TO REPLEAD

Should Plaintiff seek to set out a sufficient basis for the

Court's exercise of jurisdiction in this action, it shall file an

Amended Complaint within thirty (30) days of the date of this Order.  Plaintiff's failure to do so shall be deemed a waiver of its right to amend the Complaint.

## CONCLUSION

Plaintiff's application for an Ex Parte Order For Process of Maritime Attachment is DENIED because the contracts at issue in this matter are not maritime contracts and therefore do not fall within the Court's admiralty jurisdiction under 28 U.S.C. § 1333(1).  As the Court lacks subject matter jurisdiction over this matter, pursuant to  Fed. R. Civ. P. 12(h)(3), the Complaint is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

Dated:    New York, New York
          June 5, 2007

_Deborah A. Batts_
Deborah A. Batts
United States District Judge