UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
BRAVE BULK TRANSPORT LTD.,                    **07 Civ. 4546 (CM)**


                              Plaintiff,


          -against-


SPOT ON SHIPPING LTD., a.k.a. SPOT
ON SHIPPING LTD. BVI, a.k.a. SPOT ON,
a.k.a. CLAYTON STAR COMPANY LIMITED
a.k.a. CLAYTON STAR and PHEW ASSET
MANAGEMENT LIMITED a.k.a. PEHW ASSET
MANAGEMENT LTD. and ZHANGGANG SHIPPING
LIMITED,


                              Defendant.
----------------------------------------X




### MEMORANDUM OF LAW
### IN OPPOSITION TO MOTION




Edward A. Keane (EK 1398)
Garth S. Wolfson (GW 7700)

     Of Counsel




**MAHONEY & KEANE, LLP**
**Attorneys for Defendant**
**ZHANGGANG SHIPPING LIMITED**
**111 Broadway, Tenth Floor**
**New York, New York 10006**
**(212) 385-1422**

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES...............................................ii

ARGUMENT...........................................................1

    POINT I.      NO BASIS FOR RECONSIDERATION IS PROPERLY
                  BEFORE THE COURT...........................1

    POINT II.     PLAINTIFF'S FAILURE TO TIMELY OPPOSE
                  ZSL'S MOTION IS UNEXCUSED...................3

    POINT III.    SHOULD THE COURT RECONSIDER ZSL'S MOTION,
                  THE RESULT SHOULD REMAIN UNCHANGED.........5

        A.       THE ATTACHMENT WAS PROPERLY VACATED ON
                  THE GROUND THAT THE FFA IS NOT A MARITIME
                  CONTRACT...................................6

        B.       THE ATTACHMENT WAS PROPERLY VACATED ON
                  THE GROUND THAT PLAINTIFF HAS FAILED TO
                  PRESENT FACTS SUFFICIENT TO SUPPORT THE
                  ALLEGATION THAT ZSL'S IS AN "ALTER-EGO"
                  OF THE CONTRACTING PARTY...................12

        C.       WE NOW ALSO KNOW THAT THE ATTACHMENT
                  SHOULD REMAIN VACATED ON RIPENESS GROUNDS,
                  AS WELL.....................................18

    CONCLUSION.....................................................20

## TABLE OF AUTHORITIES

*Page*

***Cases:***

Alban Engine Power, Inc. v. The Tug Captain King,
1985 A.M.C. 2923 (D. Md. 1985)....................................4

Ameritrust Co. Nat'l Ass'n v. Dew,
151 F.R.D. 237 (S.D.N.Y. 1993)...................................1

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,
460 F.3d 434, 2006 A.M.C. 1872 (2d Cir. 2006)..............8,14

Aston Agro-Indus. AG v. Star Grain Ltd., No. 06 Civ. 2805
(GBD), 2006 U.S. Dist. LEXIS 91636 (S.D.N.Y. Dec. 20, 2006)....6

Atwood Navigation, Inc. v. M/V Rizal, No. 89-1221,
1989 U.S. Dist. LEXIS 1828 (E.D. Pa. Feb. 24, 1989)............13

Bermuda Express, N.V. v. M/V Litsa,
872 F.2d 554, 1989 A.M.C. 1537 (3d Cir. 1989).................7

Champion v. Artuz, 76 F.3d 483 (2d Cir. 1996)...................2

Dolco Investments, Ltd. v. Moon river Development, Ltd.,
486 F. Supp. 2d 261 (S.D.N.Y. 2007)........................12,14

Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.,
782 F.2d 329 (2d Cir. 1986)...................................12

East Coast Novelty Co. v. City of New York,
141 F.R.D. 245 (S.D.N.Y. 1992).................................1

Eitzen Sealift A/S v. Cementos Andinos Dominicanos, SA,
05 Civ. 4550 (DC),
2005 U.S. Dist. LEXIS 19876 (S.D.N.Y. Sep. 9, 2005)...........18

Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH & Co.,
409 F. Supp. 2d 427 (S.D.N.Y. 2006)............................8

Exxon Corp. v. Central Gulf Lines, Inc.,
500 U.S. 603 (1991)............................................6

Federal Trade Commission v. Metropolitan Communications Corp.,
No. 94 Civ. 0142, 1995 WL 540050  (S.D.N.Y. Sept. 11, 1995)......2

Fednav, Ltd. v. Isoramar, S.A., 925 F.2d 599 (2d Cir. 1991)....7

Fireman's Fund Ins. Co. v. M/V CCNI Antartico,
No. 02 Civ. 0087 (LAK),
2002 U.S. Dist. LEXIS 15015 (S.D.N.Y. Aug. 15, 2002)............2

First Am. Corp. v. Price Waterhouse LLP,
No. M8-85, 1999 WL 148460 (S.D.N.Y. March 18, 1999)..............1

Fisherman's Wharf Fillet, Inc., Limitation Proceedings,
83 F. Supp. 2d 651, 2000 A.M.C. 1331 (E.D. Va. 1999)............4

Folksamerica Ins. Co. v. Clean Water of New York, Inc.,
413 F.3d 307, 2005 A.M.C. 1747 (2d Cir. 2005).................7

Frankel v. ICD Holdings S.A.,
939 F. Supp. 1124 (S.D.N.Y. 1996)...............................1

Greenwich Marine, Inc. v. S.S. Alexandra,
339 F.2d 901 (2d Cir. 1965)....................................18

In re: Interbulk, Ltd. v. Louis Dreyfus Corp.,
No. 97-44202 (TLB), 240 B.R. 195, 1999 Bankr. LEXIS 1336
(Bankr. S.D.N.Y. 1999).........................................8

In re: McGillewie v. Parker, Poe, Adams & Bernstein,
936 F. Supp. 327 (W.D.N.C. 1995)..............................16

Insurance Co. of N. Am. v. S/S Hellenic Challenger,
88 F.R.D. 545 (S.D.N.Y. 1980)..................................5

International Marine Consultants, Inc. v. Captain A. Karavias,
No. 82 Civ. 8296 (CMM),
1985 U.S. Dist. LEXIS 19272 (S.D.N.Y. Jun. 3, 1985)...........14

Kirno Hill Corp. v. Holt,
618 F.2d 982 (2d Cir. 1980)...................................12

Korwek v. Hunt, 649 F. Supp. 1547 (S.D.N.Y. 1986),
aff'd, 827 F.2d 874 (2d Cir. 1987)..............................2

Link v. Wabash R.R. Co., 370 U.S. 626 (1962) ....................4

Lovanyak v. Cogdell, 955 F. Supp. 172 (E.D.N.Y. 1996) ...........2

Mariac Shipping Company Ltd. v. Meta Corp. N.V.,
No. 05 Civ. 2224 (LAK)(GWG), 2007 U.S. Dist. LEXIS 41823,
2007 A.M.C. 1736 (S.D.N.Y. Jun. 11, 2007) ......................16

Maritima Petroleo e Engenharia Ltda v. Ocean Rig 1 AS,
78 F. Supp. 2d 162 (S.D.N.Y. 1999) .............................6

Marubeni Am. Corp. v. M.V. L. Jalabert Bontang,
1985 A.M.C. 2207 (S.D.N.Y. 1984) ...............................5

Morse Diesel, Inc. v. Fidelity and Deposit Co.,
768 F. Supp. 115 (S.D.N.Y. 1991) ...............................2

Morser v. AT&T Information Sys.,
715 F. Supp. 516 (S.D.N.Y. 1989) ...............................2

Norfolk Southern Ry. Co. v. Kirby,
543 U.S. 14 (2004) .............................................6

P.R. Ports Auth. V. Barge Katy-B,
427 F.3d 93 (1st Cir. 2005) ...................................12

Pacific Surety Co. v. Leatham & Smith Towing & Wrecking Co.,
151 F. 440 (7th Cir. 1907) .....................................7

Patricia Hayes & Assoc's, Inc. v. M/V Big Red Boat II,
No. 00 Civ. 6925 (GBD), 2002 U.S. Dist. LEXIS 9867,
2002 A.M.C. 1722 (S.D.N.Y. May 31, 2002) ......................8

Peralta Shipping Corp. v. Smith & Johnson Shipping Corp.,
739 F.2d 798 (2d Cir. 1984) ...................................7

Quartararo v. Catterson,
73 F. Supp. 2d 270 (E.D.N.Y. 1999) ............................1

Resnick v. Resnick, No. 85 Civ. 9026 (RJW),
1990 U.S. Dist. LEXIS 14206 (S.D.N.Y. Oct. 24, 1990) ..........16

Robinson v. Bantam Books, Inc.,
49 F.R.D. 139 (S.D.N.Y. 1970) .................................5

Setsea S.P.A. v. Source Link Shipping Co. Ltd.,
No. 07 Civ. 4147 (DAB) (S.D.N.Y. Jun. 5, 2007)...........8,9,10

Status Int'l S.A. v. M/V Esperanza C,
994 F. Supp. 182, 186 (S.D.N.Y. 1998).........................12

Stevedoring Serv's of Am. v. Ancora Transp., N.V.,
59 F.3d 879 (9th Cir. 1995)..................................13

System Management Arts Inc. v. Avesta Technologies, Inc.,
106 F. Supp. 2d 519(S.D.N.Y. 2000)............................1

Ullises Shipping Corp. v. FAL Shipping Co.,
No. 05 Civ. 9424 (SAS),
2006 U.S. Dist. LEXIS 2283 (S.D.N.Y. Jan. 20, 2006)..........13

United Philippine Lines, Inc. v. Western Bulk Carriers,
No. 96 Civ. 8868 (MBM), 1997 U.S. Dist. LEXIS 5616,
1997 A.M.C. 2132 (S.D.N.Y. Apr. 28, 1997).....................8

Violette v. Armonk Assoc's, L.P.,
823 F. Supp. 224 (S.D.N.Y. 1993)..............................1

Winter Storm Shipping, Ltd. v. TPI,
310 F.3d 263 (2d Cir. 2002)...................................6

**Statutes and Rules:**

7 U.S.C. § 1.................................................11

7 U.S.C. § 27................................................11

15 U.S.C. § 78(c)(47)........................................11

28 U.S.C. § 1333..............................................6

Fed. R. Civ. P. 12(h)(3)......................................9

Fed. R. Civ. P. 60............................................5

Fed. R. Civ. P. Supp. R. E(2)(a)...........................12,14

Fed. R. Civ. P. Supp. R. E(4)(f)...........................3,5,14

v

Fed. R. Civ. P. E advisory committee's note......................5

Local Rule 6.3.................................................1

Local Admiralty Rule E.1......................................3

**_Treatises:_**

T.J. Schoenbaum, <u>Admiralty and Maritime Law</u>
§ 3-10 (4th ed., West 2004)..................................7

## ARGUMENT

**POINT I.          NO BASIS FOR RECONSIDERATION IS PROPERLY BEFORE THE COURT.**

"A motion for reargument is appropriate where 'the Court overlooked controlling decisions or material factual matters that were before the court on the underlying motion.'" Frankel v. ICD Holdings S.A., 939 F. Supp. 1124, 1126 (S.D.N.Y. 1996) (quoting Violette v. Armonk Assoc's, L.P., 823 F. Supp. 224, 226 (S.D.N.Y. 1993)); accord, System Management Arts Inc. v. Avesta Technologies, Inc., 106 F. Supp. 2d 519, 521 (S.D.N.Y. 2000) (citing Ameritrust Co. Nat'l Ass'n v. Dew, 151 F.R.D. 237, 238 (S.D.N.Y. 1993); East Coast Novelty Co. v. City of New York, 141 F.R.D. 245 (S.D.N.Y. 1992)).

"No affidavits or new material may be submitted. S.D.N.Y. Civ. R. 3(j). Thus such a motion is limited to the record that was before the Court on the original motion." Frankel, 939 F. Supp. at 1126 ("To a substantial extent, this discussion is based on affidavits that were not before the Court on the motion for summary judgment and that therefore are not properly considered on the motion for reargument."); see also, System Management, 106 F. Supp. 2d at 521 ("A motion for reconsideration is not the proper avenue for the submission of new material. Such material should be stricken and disregarded.") (citing Local Rule 6.3; First Am. Corp. v. Price Waterhouse LLP, No. M8-85, 1999 WL 148460 (S.D.N.Y. March 18, 1999); Quartararo v. Catterson, 73 F. Supp. 2d 270, 273 (E.D.N.Y. 1999)).

1

This rule is to be narrowly construed and strictly applied. See, Morse Diesel, Inc. v. Fidelity and Deposit Co., 768 F. Supp. 115, 116 (S.D.N.Y. 1991); Morser v. AT&T Information Sys., 715 F. Supp. 516, 517 (S.D.N.Y. 1989); Korwek v. Hunt, 649 F. Supp. 1547, 1548 (S.D.N.Y. 1986), aff'd, 827 F.2d 874 (2d Cir. 1987); see also, Fireman's Fund Ins. Co. v. M/V CCNI Antartico, No. 02 Civ. 0087 (LAK), 2002 U.S. Dist. LEXIS 15015 (S.D.N.Y. Aug. 15, 2002) ("Putting the best face on it, answering papers were about two weeks late and were received only after the Court decided the motion for summary judgment.  Thus, there were no opposition papers before the Court that could have been overlooked . . . Plaintiff simply does not have the right, by virtue of its own carelessness, to impose on the Court's resources to consider the same motion a second time.").

In the case at bar, opposition papers were never timely filed, and the Court has issued a decision on ZSL's motion.  The Court was more than justified in granting defendants motion, even based solely on plaintiff's failure to timely interpose any opposition.  See, Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996); Lovanyak v. Cogdell, 955 F. Supp. 172, 173 (E.D.N.Y. 1996); Federal Trade Commission v. Metropolitan Communications Corp., No. 94 Civ. 0142, 1995 WL 540050 at *1 (S.D.N.Y. Sept. 11, 1995).

In any event, as there is no dispute that the motion was not timely opposed, there are no facts or law that have been overlooked or misapprehended in the Court's decision.  Nor would

2

it be appropriate for the Court to examine plaintiff's untimely submissions now before the Court, because those papers were admittedly not considered by the Court when defendants' motion was decided.    Plaintiff's attempt to present and rely on opposition papers which are <u>dehors</u> the record should thus be disregarded as a matter of law.

**POINT  II.      PLAINTIFF'S FAILURE TO TIMELY OPPOSE ZSL'S MOTION IS UNEXCUSED.**

Notably, the papers filed in support of the motion for reconsideration fail to make any effort whatsoever to excuse plaintiff's failure to oppose ZSL's motion, a prerequisite for relief under Rule 60 and an especially important one in the context of the Constitutional Due Process underpinnings of a Rule E motion. <u>See</u> Fed. R. Civ. P. E(4)(f); <u>see also</u> Local Admiralty Rule E.1.  The only explanation offered by plaintiff for failing to oppose ZSL's motion, or even offer an argument on the matter until more than three weeks had passed, is contained in plaintiff's letter to the Court dated September 17, 2007 advising that plaintiff was unaware of the motion until September 14, 2007.

However, after the undersigned asked for, and received from, plaintiff's counsel a copy of the subject FFA, ZSL's motion was electronically filed on August 22, 2007.  And e-mail notification was contemporaneously provided to no less than two attorneys at plaintiff's law firm.  Moreover, on August 23, 2007, the letter to the Court covering the courtesy copies was faxed to, and according to the transmission receipt received by, plaintiff's counsel.

3

Thus, while plaintiff is apparently hesitant to admit it, clearly the only reason plaintiff neglected to timely oppose the motion or seek an extension is law office failure of a type which has been repeatedly held wholly inadequate to excuse a default. As discussed by Justice Harlan in Link v. Wabash R.R. Co., 370 U.S. 626 (1962):

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

Id. at 633-34; see also, Fisherman's Wharf Fillet, Inc., Limitation Proceedings, F/V Triangle I, 83 F. Supp. 2d 651, 2000 A.M.C. 1331 (E.D. Va. 1999) (denying motion for reconsideration of motion for summary judgment, despite alleged mental incapacity of counsel, where motion for leave to serve untimely opposition to motion for summary judgment was received the same day that summary judgment was entered); Alban Engine Power, Inc. v. The Tug Captain King, 1985 A.M.C. 2923, 2925 (D. Md. 1985) ("Even if such relatively simple pleadings required extra time and effort, which they do not, there is no excuse for defendants' failure to contact the plaintiff or this Court to request an extension of time or to show in any way an intention to comply with the federal rules

4

governing this proceeding."); <u>Marubeni Am. Corp. v. M.V. L.
Jalabert Bontang</u>, 1985 A.M.C. 2207, 2208 (S.D.N.Y. 1984) ("This
Court is unwilling to conclude that such inter-office confusion
constitutes excusable neglect within the meaning of Rule 60(b).")
(citing <u>Insurance Co. of N. Am. v. S/S Hellenic Challenger</u>, 88
F.R.D. 545, 548 (S.D.N.Y. 1980); <u>Robinson v. Bantam Books, Inc.</u>,
49 F.R.D. 139, 141-42 (S.D.N.Y. 1970)).

**POINT III.    SHOULD THE COURT RECONSIDER ZSL'S MOTION, THE
                RESULT SHOULD REMAIN UNCHANGED.**

Of course, this Court did more than merely default the
plaintiff. The merits of the case were thoroughly analyzed in
accordance with the relevant authorities before the motion was
granted.

After attaching property under Rule B, "plaintiff shall be
required to show why the arrest or attachment should not be
vacated or other relief granted consistent with these rules."
Fed. R. Civ. P. E(4)(f). "The plaintiff has the burden of showing
why the seizure should not be vacated." Fed. R. Civ. P. E
advisory committee's note.

ZSL respectfully submits that the papers which caused the
writ of maritime attachment and garnishment in this case to be
issued are <u>prima facie</u> deficient, and the order of attachment
should remain vacated.

A.        **THE ATTACHMENT WAS PROPERLY VACATED ON THE GROUND THAT THE FFA IS NOT A MARITIME CONTRACT.**

"Absent the requisite admiralty or maritime jurisdiction, a *Rule B* maritime attachment is void." Aston Agro-Indus. AG v. Star Grain Ltd., No. 06 Civ. 2805 (GBD), 2006 U.S. Dist. LEXIS 91636, **7-9 (S.D.N.Y. Dec. 20, 2006) ("In this case, the contracts are not maritime contracts because their primary objective was not the transportation of goods by sea."); see also, Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 268 (2d Cir. 2002) ("[T]he plaintiff's claim must be one which will support a finding of admiralty jurisdiction under *28 U.S.C. § 1333*."); Maritima Petroleo e Engenharia Ltda v. Ocean Rig 1 AS, 78 F. Supp. 2d 162, 172 (S.D.N.Y. 1999) ("Because of the absence of subject matter jurisdiction . . . the maritime attachment is vacated.").

In determining whether a contract is "maritime" so as to support admiralty jurisdiction, a court must look to "the subject matter of the . . . contract" and "the services performed under the contract." Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S. 603, 612 (1991); see also, Norfolk Southern Ry. Co. v. Kirby, 543 U.S. 14, 24 (2004) (holding bills of lading to be maritime contracts "because their primary objective [wa]s to accomplish the transportation of goods by sea from Australia to the eastern coast of the United States."). "[T]he subject matter of the contract must be directly and intimately related to the operation of a vessel and navigation; it is not enough that the contract

relate in some preliminary (shoreside) manner to maritime affairs." T.J. Schoenbaum, Admiralty and Maritime Law § 3-10 at 131 (4th ed., West 2004).

Accordingly, agreements to cover liabilities only arising from underlying maritime contractual obligations have consistently been held not to constitute maritime contracts. See, Folksamerica Ins. Co. v. Clean Water of New York, Inc., 413 F.3d 307, 323, 2005 A.M.C. 1747 (2d Cir. 2005) ("[W]e will not construe the contractual liability coverage of the Policy as marine."); Fednav, Ltd. v. Isoramar, S.A., 925 F.2d 599, 601 (2d Cir. 1991) (agreement to act as surety for another's breach of charter party is non-maritime) (citing Pacific Surety Co. v. Leatham & Smith Towing & Wrecking Co., 151 F. 440, 444 (7th Cir. 1907) ("[T]he money liability is assumed in a new contract, under a new form and by a new party, and is thus equally distinguishable from the original maritime contract.")); Bermuda Express, N.V. v. M/V Litsa, 872 F.2d 554, 563, 1989 A.M.C. 1537 (3d Cir. 1989) ("[W]e believe that in any event it is unreasonable to include commissions for solicitation of freight and provision of financial services as necessaries. Such commissions are outside the realm of stevedoring maritime contracts and cannot be the subject of a maritime lien.") (citations omitted); Peralta Shipping Corp. v. Smith & Johnson Shipping Corp., 739 F.2d 798, 802 (2d Cir. 1984) ("[N]either an agreement to procure insurance, or crews, nor an undertaking to act as broker in securing cargo, or a charter party, have been

cognizable in admiralty."); Patricia Hayes & Assoc's, Inc. v. M/V Big Red Boat II, No. 00 Civ. 6925 (GBD), 2002 U.S. Dist. LEXIS 9867, **10-14, 2002 A.M.C. 1722 (S.D.N.Y. May 31, 2002) (holding "Federal Maritime Commission Passenger Vessel Surety Bond . . . which requires Sureties to refund a maximum of $5,000,000 to passengers for unperformed cruises" are not maritime contracts); United Philippine Lines, Inc. v. Western Bulk Carriers, No. 96 Civ. 8868 (MBM), 1997 U.S. Dist. LEXIS 5616, **9-11, 1997 A.M.C. 2132 (S.D.N.Y. Apr. 28, 1997) (holding letters of indemnity for issuance of clean bills of lading pursuant to charter party are not maritime contracts);

A forward freight agreement (FFA) is "essentially a derivatives contract" whereby a party attempts "to insulate itself from market fluctuations in freight rates for future shipments during the covered period." Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH & Co., 409 F. Supp. 2d 427, 430 (S.D.N.Y. 2006), overruled on other grounds, Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 2006 A.M.C. 1872 (2d Cir. 2006); see also, In re: Interbulk, Ltd. v. Louis Dreyfus Corp., No. 97-44202 (TLB), 240 B.R. 195, 1999 Bankr. LEXIS 1336 (Bankr. S.D.N.Y. 1999) ("[T]he FFA's essentially swap freight rates at a future date based on the changes of an index.").

Accordingly, only one known decision has specifically addressed the issue of whether an FFA may qualify as a "maritime contract." See, Setsea S.P.A. v. Source Link Shipping Co. Ltd., No. 07 Civ. 4147 (DAB) (S.D.N.Y. Jun. 5, 2007). And that opinion

8

emphatically held that it does not.

> The Court finds that the Agreements, when
> signed, related to reciprocal future promises
> of payment in cash and that they do not
> address maritime services or transactions
> such as the transportation of specific
> cargoes or the involvement of specific
> vessels. The Agreements merely seek to
> establish a means of minimizing financial
> risk and establishing a formula to make
> future costs and revenues more predictable.
> Plaintiff has therefore failed to establish
> that this Court has admiralty jurisdiction
> over the alleged breach of the Agreements.
> The Court accordingly DENIES Plaintiff's
> application for an Ex Parte Order for Process
> of Maritime Attachment and DISMISSES this
> action for lack of subject matter
> jurisdiction pursuant to Fed. R. Civ. P.
> 12(h)(3).

Id. at 8.

In the case bar, plaintiff judicially admits that the writ of attachment was obtained to secure a foreign lawsuit to enforce this very type of FFA, pursuant to which "Defendant Spot On agreed to sell and buy freight futures with the Plaintiff." (Amended Complaint, Exhibit A to Zhang Declaration, at ¶¶ 8, 12). The FFA thus appears to be no different than that in Setsea.

Plaintiff's suggestion that the Setsea decision has been reversed or superseded is not accurate. No subsequent decision has been located reversing or superseding the Setsea order previously cited by the Court. That decision expressly allowed the plaintiff to try to establish maritime jurisdiction by way of an amended pleading. No further activity is noted in the docket for that file. Apparently, however, unlike in the case at bar, the plaintiff in the Setsea case refiled a new, different, and

expanded complaint for the same relief, and that writ of attachment issued without opposition.

The fact that Rule B attachments have allegedly been signed with respect to complaints involving FFA's is neither here nor there, as judges sign such attachment orders as a matter of course, with the required review only following thereafter in any Rule E proceedings. That is the process mandated by the Federal Rules. The suggestion by plaintiff that the mere signing of such orders constitutes "findings" or, indeed, any precedent whatsoever is just, frankly, incredible. All but one of the orders cited in plaintiff's Memorandum of Law involve attachments sought and obtained by plaintiff's counsel, and in none of them has a defendant even appeared, let alone opposed the attachment. What is remarkable about Setsea is that Judge Batts even noticed the issue and, after demanding an explanation from plaintiff's counsel, decided it, before the attachment had even been challenged. The fact that the Setsea court allowed the plaintiff to specifically allege maritime jurisdiction in an amended pleading, at least pending some opposition, can hardly be said to signify anything. It is still apparent that no prior written decision has addressed the question with particularity aside from Setsea, which remains perfectly good law.

And even disregarding Judge Batts's decision, ZSL stands by its view that FFA's should not come close to qualifying as maritime contracts. There can be no question that FFA's are more akin to the kind of agreements discussed in the cases above, which

10

found no maritime contract, than to the kind of agreements traditionally found to support maritime jurisdiction. Plaintiff cites cases involving marine insurance, boat storage, container leasing, and marine fueling contracts. The suggestion that FFA's are anything like such agreements stretches credulity. FFA's are admittedly derivatives contracts, such that the party to the FFA (uninvolved in the underlying maritime transportation and freight payment) might benefit or lose based on future freight rates incurred by other parties. Their closest analogy in the maritime jurisprudence can thus be found in the many cases finding that contracts covering liabilities only arising from underlying maritime contractual obligations (such as contractual liability policies, surety agreements, financial agreements, brokerage agreements, and indemnity agreements) do not themselves constitute maritime contracts.

The website for the Baltic (cited by plaintiff's counsel) itself states that "an FFBA is after all more of a financial than maritime contract and subject to an increasingly varied and expanding market." (Exhibit H to Wolfson Declaration).

The courts have described them as "derivatives" or "swap agreements." Such terms are not found in texts on charter parties and bills of lading; they are defined in the Legal Certainty for Bank Products Act of 2000, 7 U.S.C. § 27, the Securities Exchange Act of 1934, 15 U.S.C. § 78(c)(47), and the Commodity Exchange Act, 7 U.S.C. § 1. And its there that they should remain.

11

B.  **THE ATTACHMENT WAS PROPERLY VACATED ON THE GROUND THAT PLAINTIFF HAS FAILED TO PRESENT FACTS SUFFICIENT TO SUPPORT THE ALLEGATION THAT ZSL'S IS AN "ALTER-EGO" OF THE CONTRACTING PARTY.**

"Piercing of the corporate veil" is only allowable where:

> (1) a corporation uses its alter ego to perpetrate a fraud or (2) where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own.

Status Int'l S.A. v. M/V Esperanza C, 994 F. Supp. 182, 186 (S.D.N.Y. 1998) (citing Dow Chem. Pac. Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 342 (2d Cir. 1986); Kirno Hill Corp. v. Holt, 618 F.2d 982, 984-85 (2d Cir. 1980)).

Moreover, Supplemental Rule E demands a level of "particularity" greater than that otherwise tolerated in a normal notice pleading. See Fed. R. Civ. P. E(2)(a); see also, P.R. Ports Auth. V. Barge Katy-B, 427 F.3d 93, 105 (1st Cir. 2005)("This heightened pleading standard is not some pettifogging technicality meant to trap the unwary, but, rather a legal rule designed to counterbalance the unique and drastic remedies that are available in in rem admiralty proceedings.")

Accordingly, a Rule B attachment of an alleged alter ego's property can not be sustained in the absence of allegations, with particularity, of at least some specific facts demonstrating the type of corporate domination and control sufficient to pierce the corporate veil. See, generally, Dolco Investments, Ltd. v. Moon river Development, Ltd., 486 F. Supp. 2d 261, 272 (S.D.N.Y. 2007) ("Dolco fails to meet this burden because it has not included any

factual allegations that GML exercised complete domination over Moonriver. Other than the conclusory allegation of domination, the Complaint and the Amended Complaint both allege that GML paid Moonriver's debts to Dolco 'from time to time' . . . [M]ore is required."); see also, Stevedoring Serv's of Am. v. Ancora Transp., N.V., 59 F.3d 879, 883 (9th Cir. 1995) ("Armilla (London) introduced evidence that Ancora was the only party to the stevedoring contract with SSA and that Armilla (London), not Ancora, owned the funds in question. SSA offered little more than bare assertions that Armilla (London) was an alter ego of Ancora."); Ullises Shipping Corp. v. FAL Shipping Co., No. 05 Civ. 9424 (SAS), 2006 U.S. Dist. LEXIS 2283, *19 (S.D.N.Y. Jan. 20, 2006) ("Ullises provides no facts in support of its 'partner' and 'joint venturer' theories, nor does it present any evidence that the FAL defendants use one another as alter egos to perpetrate a fraud. Furthermore, with regard to FAL energy, the evidence Ullises presents falls short of creating reasonable grounds for attaching FAL Energy's assets. It is not sufficient that FAL Energy and other FAL Defendants share common ownership. Nor is it sufficient that FAL Energy does not observe some of the formalities of separate corporate existence."); Atwood Navigation, Inc. v. M/V Rizal, No. 89-1221, 1989 U.S. Dist. LEXIS 1828, *4 (E.D. Pa. Feb. 24, 1989) ("Plaintiff Atwood suggests that, in due time, it will show that the court should 'pierce the corporate veil' to reach defendant Shipping and Trading. This proposition

is offered without any support.  I cannot conclude in light of the record that plaintiff has met its burden under Supplemental Rule E(4)(f)."); International Marine Consultants, Inc. v. Captain A. Karavias, No. 82 Civ. 8296 (CMM), 1985 U.S. Dist. LEXIS 19272, *14 (S.D.N.Y. Jun. 3, 1985) ("Plaintiff's allegation that Karavias used these corporations to insulate himself from liability is unsubstantiated.").

The suggestion by plaintiff that the Court employed the wrong standard and, under Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F. 3d 434 (2d Cir. 2006), courts should now decline to vacate an attachment based on a purported "alter-ego" relationship as long as plaintiff's complaint, even in the most conclusory manner, makes such an allegation is plain wrong.  Aqua Stoli did not involve fraud or alter-ego allegations.  And the Dolco decision, which was followed by this Court in vacating the attachment and is the most recent and thorough opinion before the Court, yet which plaintiff declined to cite for the Court in moving for reconsideration, was decided after and in accordance with Aqua Stoli.  After discussing Aqua Stoli, and thoroughly reviewing the state of the law, Judge Sweet ruled that specific, factual allegations, not just conclusory ones, must be included in the pleading to survive a motion to dismiss.  Dolco, 486 F. Supp. 2d at 272.  Nor has plaintiff made any mention of Rule E(2)(a), which expressly codifies the requirement that such claims be stated with particularity.  Fed. R. Civ. P. Supp. R. E(2)(a).

14

It was never ZSL's position, or this Court's, that facts beyond the pleadings must necessarily be examined to determine whether a prima facie claim for Rule B relief has been stated. But the boiler-plate allegations in this case do not pass muster under any standard. The Amended Complaint sub judice merely presents wholly conclusory allegations that ZSL was somehow an "alter ego" of SPOT ON SHIPPING LIMITED. (Amended Complaint, Exhibit A to Zhang Declaration, at ¶¶ 22-28). Simply no facts are outlined with the specificity required to sustain the drastic relief afforded by Rule B against a non-party to the subject contract. Id.

Moreover, when faced with a dispositive motion, wherein ZSL averred in no uncertain terms that no such "alter ego" relationship ever existed, it behooved the plaintiff to present the good faith basis for those alter-ego allegations. And the record continues to fail to support the drastic measures taken by plaintiff in obtaining the ex parte seizure of ZSL's property and the complete disruption of its operations. ZSL thus reserves its rights to seek any and all relief, including damages, as a result of plaintiff's lack of good faith in causing this attachment to issue.

The showing that has now been untimely presented by plaintiff is surely inadequate to justify the attachment. Plaintiff merely submits an attorney declaration. No evidence from anyone with personal knowledge has been presented to justify this attachment,

or the other "alter ego" complaint against ZSL plaintiff's counsel has brought before Judge Marrero under Case No. 07-3820, even after the Court has given plaintiff another opportunity to come forward with real evidence. See, generally, Mariac Shipping Company Ltd. v. Meta Corp. N.V., No. 05 Civ. 2224 (LAK)(GWG), 2007 U.S. Dist. LEXIS 41823, *20, 2007 A.M.C. 1736 (S.D.N.Y. Jun. 11, 2007) ("Obviously, 'enquiries' of other people and a 'review' of court filings do not amount to personal knowledge.").

Essentially, plaintiff relies on the document attached as Exhibit 4 to Ms. Davies's Declaration. Nowhere does plaintiff even attempt to identify what the document is, who prepared it, or anything else about it. Indeed, only "Page 2" is attached, but perhaps plaintiff's counsel only declined to reveal to the Court the ample disclaimers on the accuracy of the reporting that invariably accompany such materials. The bottom of the page identifies the likely preparer as "Lloyd's MIU," an information service which appears from its website to provide, for a fee, unofficial credit reports. It is well-settled that such reports are inadmissible hearsay, with no evidentiary value. See, Resnick v. Resnick, No. 85 Civ. 9026 (RJW), 1990 U.S. Dist. LEXIS 14206, *34 (S.D.N.Y. Oct. 24, 1990) ("The Dunn & Bradstreet Report is inadmissible hearsay.'); see also, In re: McGillewie v. Parker, Poe, Adams & Bernstein, 936 F. Supp. 327, 329 (W.D.N.C. 1995).

Moreover, the Report is wrong.   It inaccurately identifies ZSL as a "joint venture" with Spot On (Hong Kong) Group Corporation Limited.    Spot On (Hong Kong) Group Corporation Limited is not among the Spot On entities even named in plaintiff's complaint.   So, even if true, such a joint venture would not support the attachment.   However, the motion papers submitted by plaintiff muddle the two Spot On entities throughout in an obvious attempt to confuse the Court on the matter.

Moreover, ZSL previously submitted to the Court its Commercial Services Agreement with Spot On (Hong Kong) Group Limited making perfectly clear the precise arrangement between the two companies.   This was never any secret, and true "alter egos" would never have felt the need to enter into a formal written agreement for consideration.   Moreover, under no stretch of the imagination can that contract be described as a "joint venture." ZSL, in fact, does have its own e-mail address, and the Agreement expressly states that "[t]he Principal is desires [sic.] to share office space with the Manager . . . "   A common address should thus hardly come as any surprise or in any way lead to the conclusion that the parties to the contract were one and the same. And the Court has before it statements under oath from actual witnesses with knowledge averring perfectly clearly that no Spot On entity has any ownership interest in ZSL.   <u>See</u>, ZSL's prior Declaration dated August 22, 2007; <u>see also</u>, Exhibits F-G to Wolfson Declaration.

Plaintiff's counsel's bald allegation that ZSL's operations were not, in fact, devoted to ocean shipping for Zhangdian Iron Steel Works is also totally unjustified and categorically false. Indeed, plaintiff is, no doubt, well-aware that the seized funds are identified as payments for Zhangdian Iron Steel Works, a fact which lends irrefutable support to ZSL's position and, again, belies plaintiff's. See id.

Plaintiff's Amended Complaint recites no specific factual allegations which can support the "alter ego" claim against ZSL. But, even after plaintiff has been afforded two more opportunities to come forward with some factual basis for this claim, simply nothing unusual is before the Court to reasonably suggest an alter ego relationship which can support the seizure of ZSL's funds. The Court should decline to revisit its prior ruling vacating the attachment under these circumstances.

### C. WE NOW ALSO KNOW THAT THE ATTACHMENT SHOULD REMAIN VACATED ON RIPENESS GROUNDS, AS WELL.

The Second Circuit has made clear that the district court enjoys a great deal of discretion regarding whether to allow Rule B attachments to secure contingent liabilities. See, Greenwich Marine, Inc. v. S.S. Alexandra, 339 F.2d 901 (2d Cir. 1965) (vacating security sue to prematurity of underlying claim). And "it is premature to attach funds in security of arbitration in London when that arbitration has not been initiated." Eitzen Sealift A/S v. Cementos Andinos Dominicanos, SA, 05 Civ. 4550 (DC), 2005 U.S. Dist. LEXIS 19876 (S.D.N.Y. Sep. 9, 2005).

18

Even though the complaint seeking Rule B attachments was filed back on May 30, 2007, plaintiff's counsel declares that, still, "Plaintiff is currently preparing to commence litigation in against the Defendants in the English High Court on its claims as described hereinabove." (Davies Declaration, at ¶ 8).

It astounding that, if plaintiff is really intent on litigating this case and expecting to win on the merits, plaintiff hasn't even commenced the action said to give rise to the need for security. All of plaintiff's attentions, rather, seem to have been devoted to obtaining Rule B attachments, and the coercive settlements that often result. Such circumstances cry out for the exercise of the Court's discretion to at the very least hold off on issuing writs of attachments until plaintiff actually takes action on the underlying claim.

**CONCLUSION.**

WHEREFORE, ZSL urges the Court to deny plaintiff's motion for reconsideration or, in the alternative, upon reconsideration, grant to ZSL's motion to vacate the attachment, and to award to ZSL such other and further relief as this Honorable Court may deem just and proper.

Dated:      New York, New York
            September 27, 2007

                              Respectfully submitted,

                              MAHONEY & KEANE, LLP
                              Attorneys for Defendant
                              ZHANGGANG SHIPPING LIMITED


                    By:    _____
                              Edward A. Keane (EK 1398)
                              111 Broadway, Tenth Floor
                              New York, New York 10006
                              (212) 385-1422



TO:   TISDALE LAW OFFICES, LLC
      11 West 42nd Street, Suite 900
      New York, New York  10036
      Fax: (212) 869-0067