UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x

BRAVE BULK TRANSPORT LTD.,

    Plaintiff,

-against-

    07 Civ. 4546 (CM)

SPOT ON SHIPPING LTD., et al.,

    Defendant.

----------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/30/07

DECISION AND ORDER (1) DENYING DEFENDANTS' MOTION TO VACATE MARITIME ATTACHMENT AGAINST SPOT ON SHIPPING LTD., (2) GRANTING PLAINTIFF'S MOTION TO RECONSIDER PREVIOUS ORDER VACATING THE ATTACHMENT AGAINST DEFENDANT ZHANGGANG SHIPPING LIMITED (ZSL), (3) DECLINING TO REINSTATING ATTACHMENT AGAINST ZSL, AND (4) GRANTING PLAINTIFF PERMISSION TO FILE A SECOND AMENDED COMPLAINT AND A NEW REQUEST FOR A MARITIME ATTACHMENT AGAINST ZSL, PROVIDED THOSE PAPERS ARE FILED WITHIN 10 BUSINESS DAYS

McMahon J.:

    On July 10, 2007, this Court signed an ex parte order of attachment pursuant to Supplemental Admiralty Rule B. The order covered the property of all defendants named in the complaint, including Zhanggang Shipping Limited (ZSL), which was alleged to be an alter ego of defendant Spot On Shipping Ltd. Spot On was allegedly in breach of "forward freight agreements that were alleged by plaintiff to be maritime contracts, thereby permitting plaintiff to invoke the admiralty jurisdiction of this court.

    On August 22, 2007, ZSL moved to vacate the attachment of its property, pursuant to Rule E (4) (f) of the Federal Rules of Civil Procedure, on two grounds: the underlying contract that was allegedly breached by Spot On was not a maritime contract, and ZSL had not been shown to be Spot On's alter ego. Plaintiff did not respond to the motion. In a written decision and order dated September 14, 2007, this Court lifted the attachment as to defendant ZSL, finding that, based on the information contained in the complaint, ZSL is not an alter ego of Spot On. In that same order, the Court questioned whether "Forward Freight Agreements" are maritime contracts and directed plaintiff to show cause why the attachment should not be vacated in its entirety.

Brave Bulk has filed papers in response to the Court's order to show cause, in which they argue that Forward Freight Agreements are maritime contracts. Plaintiff's papers also include a motion for reconsideration of the Court's decision vacating the attachment against ZSL, arguing that *inter alia* plaintiff has a maritime claim and has adequately alleged *prima facie* alter-ego claims against ZSL and the other alter-ego defendants. Defendants, in turn, filed papers asking the Court to vacate the attachment against Spot On, and not to reconsider its ruling vacating the ZSL attachment.

On October 5, 2007, the Court heard argument on the motion pursuant to Rule E (4) (f).

Forward Freight Agreements are "Salty" Contracts

Brave Bulk and Spot On entered into a Forward Freight Agreement for the swap of the future value of ocean freight. This contract specified the type of vessel to be used, the routes upon which said vessels would travel and the duration of the agreement. *See Forward Freight Agreement."*

28 U.S.C. §1333(1) affords this Court original jurisdiction in "any civil case of admiralty or maritime jurisdiction." *See Sea Transport Contractors, Ltd. v. Industries Chemiqes du Senegal*, 411 F. Supp. 2d 386, 2006 A.M.C. 1076, 1082 (S.D.N.Y. January 24, 2006); *see also Stolt-Nielsen S.A. v. Celanese AG*, 430 F. 3d 567, 572 (2d Cir. 2005). To determine the boundaries of admiralty jurisdiction, courts turn to the purpose of the grant. *See Insurance Co. v. Dunham*, 78 U.S. 1, 11 Wall. 1, 24, 20 L. Ed. 90 (1871). As recently confirmed by the United States Supreme Court in *Exxon Corp. v. Central Gulf Lines, Inc.* 500 U.S. 603, 608 (1991), "The fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime commerce.'" *Id.; quoting Sisson v. Ruby*, 497 U.S. 358, 367 (1990); *quoting Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674 (1982). Stated another way, where "the subject matter of the contract relates to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment it is fairly said to constitute a maritime contract." *Ingersoll Milling Mach. Co. v. M/V BODENA*, 829 F.2d 293, 302 (2d Cir. 1987) (emphasis added).

While initially skeptical about the saltiness of forward freight agreements, I am now persuaded that they are sufficiently part of the business of maritime commerce to confer admiralty jurisdiction.

Forward freight agreements, or FFAs as they are commonly known, are commitments to perform in the future a shipping service between ship owners, charterers and/or traders. The parties to the agreement contract to "pay the difference between a price agreed today and the future price of moving a product from one location to another, or for the future price of hiring a ship over a period of time." Adam Sonin, *Managing Risk with Forward Freight Agreements, Commodities Now*, June 2005, *available online at:* http://www.commodities-now.com/content/market-areas/ags-and-softs/ma-article-7.pdf?PHPSESSID=34967b.

In the shipping industry, FFAs are negotiated with the express purpose of hedging and managing market risks relating to the employment of vessels in today's volatile freight market. For example, in the instant FFA, the parties entered into a Forward Freight Agreement to buy and sell

a specified tonnage freight at an agreed price for an agreed route and time span so that both corporations could reliably predict their ocean freight revenues and costs for the duration of the contract for those ocean routes. Thus, Forward Freight Agreements can fairly be said to constitute maritime contracts.

Forward Freight Agreements have been found to be maritime cases entitled to process of maritime attachment in the following cases: *C. Transport Panamax Ltd. v. North America Steamships Ltd.*, a.k.a. N.A.S.L., 06 CV 13178 (RLC); *Daeyang Shipping Co. Ltd. v. Navitrans Maritime Inc.*, 04 CV 08050 (VM); *Deiulemar v. Source Link Shipping Co. Ltd.*, 07 CV 02983 (SAS); *Deiulemar v. Spot On Shipping Ltd., et. al.*, 07 CV 03820 (VM); *Eurotrade Inc., Liberia v. Source Link Shipping Co. Ltd.*, BVI, 07 CV 3172 (SAS); *Pan Oceanic Maritime Inc. v. Source Link Shipping Co. Ltd.*, 07 CV 03089 (CM); *Perseveranza Di Navigazione S.P.A. v. Source Link Shipping Co. Ltd.*, 07 CV 03091 (RPP); *Taiwan Maritime Transport Co. Ltd. v. Navitrans Maritime Inc. and Navigation Maritime Inc.*, 06 CV 13564 (RJH), and *Setsea S.P.A. v. Source Link Shipping Co. Ltd.*, 07 CV 6230 (DAB).

In *Setsea S.P.A. v. Source Link Shipping Co. Ltd.*, 07 CV 4147 (S.D.N.Y. June 5, 2007), Judge Batts initially denied the plaintiff's application for an *ex parte* order for process of maritime attachment. Judge Batts held that although the FFA in question was "not so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction," it nonetheless fell short of the Second Circuit's requirement that the contract reference "maritime service or maritime transactions." *Setsea S.P.A. v. Source Link Shipping Co. Ltd.*, 07 CV 4147, Order Denying Application for Ex Parte Order (S.D.N.Y. June 5, 2007). Judge Batts allowed Setsea leave to replead within thirty days. On July 5, 2007, Setsea submitted a Verified Amended Complaint laying out more specifically the nature of forward freight agreements and why they are maritime contracts. This time, the Court granted the Plaintiff's application for an ex parte order for process of maritime attachment finding the FFA to be a maritime contract. *See Complaint and Ex Parte Order for process of maritime attachment and garnishment in 07 CV 6230 (DAB)*.

Plaintiff has thus met its burden of demonstrating that the subject matter of this dispute is maritime in nature.

<u>Plaintiff's Motion for Reconsideration of Court's Order Vacating ZSL Attachment</u>

Plaintiff next asks the Court to revisit its decision vacating the ZSL attachment, on the ground that the Court overlooked several controlling cases that, if taken into account, would have altered the Court's conclusion. Plaintiff's argument is essentially that the Court did not consider the Second Circuit Court of Appeals decision in *Aqua Stoli* as well as and recent (albeit not "controlling") Southern District cases like *Tide Line and Route Holding*, which stand *inter alia* for the proposition that a plaintiff need only allege a *prima facie* maritime claim against the principal defendant and a *prima facia* case against the alleged alter-ego entity in order to satisfy its pleading burden under Rule E (4) (f). Plaintiff argues that they have met that burden in their Amended Complaint. Defendants strongly oppose the motion.

"The standard for granting . . . a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citing *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990); *Adams v. United States*, 686 F. Supp. 417, 418 (S.D.N.Y. 1988)). The decision to grant or deny the motion is committed to the sound discretion of the district court. *Devlin v. Transportation Communications Int'l Union*, 175 F.3d 121, 132 (2d Cir. 1999).

In a letter dated September 17, 2007 and at the Rule E (4) (f) hearing held on October 5, 2007, plaintiff's attorneys advised the Court that they did not become aware of defendants' motion to vacate until after they received the Court's decision on the motion. I am satisfied that this is the case and so have agreed to reconsider my decision vacating the ZSL attachment in order to permit plaintiff's to respond to the motion.

The following allegations in the Amended Complaint allegedly support plaintiff's claim that ZSL is an alter ego of Spot On:

22. Upon information and belief, Zhanggang is the alter ego of Spot On because it dominates and disregards Spot On's corporate form to the extent that Zhanggang is actually carrying on Spot On's business and operations as if same were its own.

23. Upon information and belief, Defendant Zhanggang is an alias, or agent of Defendant Spot On and/or Spot On is an alias, or agent of Zhanggang.

24. Upon information and belief, Defendants Zhanggang and Spot On are commonly beneficially owned, and commonly managed, controlled and dominated, by the same individuals, including Mrs. Wei-Lu Zhang and Ms. Sammy Yu, and used to carry on such individuals' own business.

25. Upon information and belief, Defendant Zhanggang has no separate, independent identity from Defendant Spot On as they use their names interchangeably with design to fraudulently avoid payment of just debts to their creditors.

26. In the alternative, Defendant Zhanggang is merely a shell corporation through which Spot On conducts its business.

27. In the further alternative, Defendants Zhanggang and Spot On are partners and/or are joint venturers.

28. In the further alternative, Defendants Zhanggang and Spot On are affiliated companies such that the Defendant Zhanggang is now, or will soon be, holding assets belonging to Defendant Spot On and vice versa.

*See* Verified Amended Complaint, ¶¶22-28. Davies Decl. Ex. "1."

In an affidavit submitted in connection with the instant motion (albeit not in its original papers), Brave Bulk's counsel has set forth the basis for the "information and belief" allegations in the Verified Amended Complaint, these include:

(1) XSL and Spot On share common address and place of business at Suites: 1818-23, 18th Floor, Sun Hung Kai Centre, 30 Harbour Road, Wanchai, Hong Kong.

(2) They have the same email address

(3) An inforspectrum and a Lloyd's MIU report on the companies indicates that ZSL is a joint venture between Spot On and Zhangdian Steel Mill of China. No information in these reports indicates that ZSL is owned by the Chinese Government or by an entity that is owned by the Chinese Government.

(4) Lloyd's MIU advised plaintiff that it telephoned ZSL and was told that ZSL is a "ship charterer."

(5) Madam Wei-Lu Zhang is president of ZSL and a principal director of Spot On (Hong Kong), which also shares an address with Spot On and ZSL.

(6) ZSL chartering manager, Ms. Sammy Yu, is also listed as the contact for Spot On on the first page of the FFA between Spot ON and Brave Bulk, where she is listed as the "contact" for Spot On.

(7) The names of Spot On and ZSL are used interchangeably in the industry.

Plaintiff bolsters each of these contentions with citations to exhibits, and avers that additional connections between Spot On and ZSL will be revealed with discovery.

*See* Declaration of Lauren C. Davies ¶¶ 23-36.

Under Rule E (4) (f), the plaintiff has the initial burden to show that its attachment satisfies the requirements of Supplemental Rules B and E. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F. Supp. 434, 445 n. 5 (2d Cir. 2006). In order to sustain an attachment, a plaintiff must prove that it has satisfied the "filing and service requirements of Rules B and E" and that: (1) it has a valid *prima facie* admiralty claim against the defendant, (2) the defendant is not present in the district, (3) defendant's property can be found within the district, and (4) there is no maritime law or statutory bar to the attachment. *Aqua Stoli*, 460 F.3d at 445. The Rule(E) (4) (f) hearing is not intended to resolve the dispute between the parties, but to determine if the technical requirements of the Rule were met. *Aqua Stoli, Shipping Ltd. v. Gardner Smith Pty Ltd.*, 2006 U.S. App. LEXIS 19302, at *35 (2d Cir. 2006). Thus, as long as the plaintiff can establish that it has alleged a prima facie maritime claim, that the defendant is not present in the district and that the defendant's property has been restrained in the district and no other statutory bar to the attachment exists, the attachment should be upheld. *See Aqua Stoli*, at *28-29. *Aqua Stoli's* holding marks a departure from the prior

"probable cause/reasonable basis standard" that certain courts applied before *Aqua Stoli*.

Once a plaintiff has established the technical requirements stated in Rule B, the burden shifts to the defendant to prove the limited bases for vacatur. An otherwise facially valid Rule B attachment may only be vacated if the defendant shows at post-seizure hearing that (1) the defendant is subject to suit in a convenient adjacent jurisdiction; (2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or (3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise. *See Aqua Stoli*, at *27. Defendant has not moved on any of these grounds. So as long as the allegations in the Amended Complaint states a *prima facia* case that ZSL is an alter ego of Spot On, the attachment against ZSL must stand.

In the *Tide Line* case, Chief Judge Kimba M. Wood vacated an attachment that was based on overly general alter-ego allegations. *See* Order dated August 15, 2006 in *Tide Line, Inc. v. Eastrade Commodities Inc. and Transclear, S.A.*, 06 Civ. 1979 (KMW). Chief Judge Wood found that mere allegations that entity B was the "paying agent" for entity A, and that entity B had arranged for other non-parties to pay the debts of Entity A, was insufficient to state an alter-ego claim for Rule E (4) (f) purposes. Remarking on the paucity of alter-ego allegations, the Court noted that the complaint did not even contain the phrase "alter-ego." The Chief Judge vacated the attachment but stayed the release of any funds for 15 days, to allow plaintiff time to file an amended complaint with additional alter-ego allegations and to apply for a new order of attachment. The Court adopted this procedure because plaintiffs – like Brave Bulk in the present case – submitted additional support for their alter ego allegations in their motion to vacate opposition papers.

By contrast *Route Holding Inc. and Beam Company v. IOOI and Marina World Shipping*, 06 Civ. 3428 (PKC), Judge Castel held – on allegations strikingly similar to those in the amended complaint presently before the Court – that Route Holding and Beam Company has sufficiently pleaded their alter-ego claims against Marina World Shipping. The plaintiffs had alleged that Marina World Shipping was an alter-ego because it dominated and controlled the principal, IOOI. The district court found that plaintiffs' pleadings were sufficient to uphold the attachment, finding that:

> the plaintiff alleges that MWS is the alter-ego of IOOI, but it does not simply leave it as a conclusory allegation. It goes on to allege that the reason it believes it is the alter-ego is because IOOI dominates an disregards MWS' corporate form to the extent that MWS is actually carrying on IOOI's business and operations as if the same were its own. It further goes on to allege that MWS, acting as paying agent, acts as paying agent or arranges for other nonparties to satisfy the debts and obligations of IOOI. It seems to me a sufficient allegation.

*See* Transcript of *Route Holding* at 12, lines 14-24.

Like Brave Bulk in the case at bar and the plaintiffs in *Tide Line*, the *Route Holdings* plaintiffs submitted additional information and affidavits in support of their alter-ego claims, along with their opposition papers. Finding that the alter-ego allegations in the complaint were sufficient

for Rule B purposes, Judge Castel sidestepped the open question of whether a Court assessing the validity of a maritime claim at a Rule E (4)(f) proceeding can resort to supplemental materials outside the four corners of the complaint.

The allegations set forth above are sufficient for the Court to conclude that Brave Bulk has a good faith basis for alleging that ZSL is Spot On's alter ego. However, I agree with Chief Judge Wood that the place where those allegations should appear is in the complaint- not in material submitted to the Court for the first time in opposition to a motion to vacate. The wholly conclusory allegations in the Amended Complaint are, upon reflection, simply insufficient. Were a plaintiff to be permitted to rely on such allegations to obtain an attachment against an entity that is not a party to a contract sued on, the already thinly stretched remedy of maritime attachment could disrupt the commercial activities of entities whose links to the real defendant in interest are tenuous of non-existent. By including specific factual allegations that support "on information and belief" contentions in the complaint, the plaintiff's counsel subjects himself to Rule 11 sanctions should they prove erroneous. That is, it seems, a salutary result.

Upon reconsideration, thereof, I decline to vacate my original decision.

However, because the record reveals that plaintiff did have a good faith basis for alleging that ZSL was Spot On's alter ego, I will afford plaintiff 10 business days to file a second amended complaint, containing the basis for the alter ego allegations. Plaintiff may accompany this amended pleading with an application for a new order of attachment. Assuming the second amended complaint complies with this order, it will be granted.

This constitutes the decision and order of the Court.

October 30, 2007

_____
U.S.D.J.


BY FAX TO:

    Tisdale Law Offices (212-869-0067)
    Edward A. Keane, Esq. (212-385-1605)