UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

BRAVE BULK TRANSPORT LTD.,                    :

          Plaintiff,                    :    07 CV 4546 (CM)

    - against -                    :    ECF CASE

SPOT ON SHIPPING LTD., a.k.a. SPOT ON      :
SHIPPING LTD. BVI., a.k.a. SPOT ON,
a.k.a CLAYTON STAR COMPANY LIMITED    :
a.k.a. CLAYTON STAR and PEHW ASSET
MANAGEMENT LIMITED a.k.a. PEHW          :
ASSET MANAGEMENT LTD.
and ZHANGGANG SHIPPING LIMITED,        :

        Defendants.                    :
-------------------------------------------------------------X

## DECLARATION OF LAUREN C. DAVIES IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ZSL'S MOTION TO DISMISS MARITIME ATTACHMENT

       LAUREN C. DAVIES declares under penalty of perjury of the laws of the United States of America as follows:

       1.    I am an attorney with the firm, Tisdale Law Offices, LLC, counsel for the Plaintiff herein, Brave Bulk Transport Ltd., ("Brave Bulk" or "Plaintiff") and I make this declaration based upon my own personal knowledge and upon information and documents furnished to me that I believe to be true and accurate.

       2.    I submit this Declaration in Support of Plaintiff's memorandum of law in opposition to Defendant Zhanggang Shipping Ltd.'s ("ZSL") Motion to Dismiss this maritime attachment.

3.      By way of a Forward Freight Agreement dated February 26, 2007 (hereinafter the "FFA"), Defendant Spot On Shipping Ltd. ("Spot On") agreed to sell and buy freight futures with the Plaintiff. *See Forward Freight Agreement annexed hereto as Exhibit "1."*

4.      The FFA provided for settlement dates of the last day of three contract months: April, May and June of 2007.

5.      Despite due demand for payment, Spot On has failed to remit payment to Plaintiff in breach of the FFA.

6.      As a result of Spot On's breach of the FFA contract, Plaintiff has suffered a loss in the total principal sum of $380,769.67, as best can now be estimated, exclusive of interest, recoverable costs and reasonable attorneys fees.

7.      Pursuant to clause 16 of the FFA contract all disputes arising thereunder between the Plaintiff and Spot On are to be submitted to the English High Court of Justice with English law to apply.

8.      On or about March 18, 2008, Plaintiff initiated the commencement of litigation against Spot On in the English High Court on its claims as described hereinabove. *See March 18, 2008 letter to the High Court of Justice and accompanying Application Notice and Draft Order annexed hereto as Exhibit "2."*

9.      Upon information and belief, the Plaintiff is currently awaiting permission from the English High Court to serve the claim form and particulars of claim out of jurisdiction on Spot On in the British Virgin Islands and Hong Kong.  *See March 18, 2008 letter to the High Court of Justice and accompanying Application Notice and Draft Order annexed hereto as Exhibit "2."*

10.     In order to obtain personal jurisdiction over the Defendants and to obtain security for its maritime claims, Plaintiff commenced this action on May 30, 2007, by the filing of a Verified Complaint which included a prayer for an Ex-Parte Order for Process of Maritime Attachment pursuant to Rule B [of the Supplemental Rules for Certain Admiralty and Maritime Claims] naming Spot On Shipping Ltd. a.k.a. Spot On Shipping Ltd. BVI a.k.a. Spot On, a.k.a. Clayton Star Company Limited a.k.a. Clayton Star and Pehw Asset Management Limited a.k.a. Pehw Asset Management Ltd.

11.     On the same day, the Court issued an Ex-Parte Order of Maritime Attachment and Garnishment. The Ex-Parte Order authorized Plaintiff to attach Defendants' property located within this judicial district and belonging to the Defendants up to the sum of $540,029.94.

12.     The Ex-Parte Order and Process of Maritime Attachment and Garnishment ("PMAG") named garnishee banks believed to have assets due and owing to the Defendants  The Ex –Parte Order and PMAG were served upon the garnishee banks.

13.     On July 9, 2007, a Verified Amended Complaint which included a prayer for an Amended Ex-Parte Order for Process of Maritime Attachment pursuant to Rule B was filed naming Spot On Shipping Ltd. a.k.a. Spot On Shipping Ltd. BVI a.k.a. Spot On, a.k.a. Clayton Star Company Limited a.k.a. Clayton Star and Pehw Asset Management Limited a.k.a. Pehw Asset Management Ltd. and Zhanggang Shipping Ltd. (collectively referred to as the "Defendants").

14.     On or about July 10, 2007, the Court issued an Amended Ex-Parte Order of Maritime Attachment and Garnishment. The Ex-Parte Order authorized Plaintiff to attach Defendants' property located within this judicial district and belonging the Defendants up to the sum of $540,029.94.

15.    On or about August 14, 2007 and pursuant to the PMAG, Bank of New York restrained ZSL's property in the sum of $7,219.44.

16.    On or about September 19, 2007 and pursuant to the PMAG, HSBC restrained ZSL's property in the sum of $1,000,000.00.

17.    As there is another maritime attachment action pending in the district which names ZSL as a defendant, filed under docket number 07 CV 3820 (VM), this security will be split amongst the two Rule B Plaintiffs.

18.    To date, Brave Bulk's share is likely to be $504,219.44, half of the total sum attached pursuant to the ex parte orders for process of maritime attachment served on the garnishee banks.

19.    Defendant ZSL filed a motion to vacate the instant action on August 22, 2007.

20.    On October 30, 2007, this Court issued a decision and order denying defendant's motion to vacate maritime attachment and granting Plaintiff's motion for reconsideration.

21.    On October 31, 2007, Plaintiff filed its Verified Second Amended Complaint in compliance with the Court's order dated October 30, 2007 and this Court issued an amended ex parte order for process of maritime attachment against ZSL.

22.    On November 13, 2007, ZSL moved to reconsider this Court's October 30, 2007 decision and order.

23.    On November 21, 2007, ZSL's motion to reconsider was denied.

24.    On January 11, 2008, Plaintiff served ZSL with discovery limited to the alter ego issue.

25.    ZSL has failed to provide any response or objection to same.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 25, 2008.

Lauren C. Davies

### AFFIRMATION OF SERVICE

I hereby certify that on October 25, 2008, a copy of the foregoing DECLARATION OF LAUREN C. DAVIES was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.


By:_____/s/_____
                Lauren C. Davies

# EXHIBIT 1

# ICAPHYDE

FFABA 2005 (TM)

### FORWARD FREIGHT AGREEMENT BROKERS ASSOCIATION ('FFABA')
### FORWARD FREIGHT 'SWAP' AGREEMENT

Trade Ref            185711
Contract Date        26 February 2007

The purpose of this confirmation is to state the terms and conditions of the forward freight swap agreement entered into between:

**Seller**

**SPOT ON SHIPPING LIMITED**
Room 1818-1823, 18th floor,
Sun Hung Kai Centre
No.30 Harbour Road,
Wanchai
Hong Kong

Contact: Sammy Yu
Phone: +852-3667 9091
Fax: +852-3667 9096
Email: ffa@clayton-star.com

and

**Buyer**

**BRAVE BULK TRANSPORT OF MALTA**
Apollon Building No 2
331 Kifisias Ave
145 61 Kifisia
Greece
Contact: George Leventis
Phone: +30 2106250001
Fax: +30 2106250018
Email: leventisg@brave.gr

Trade Ref   185711

This agreement between the parties as constituted by this confirmation is referred to as the "Agreement"

Until superseded by notice information in subsequent confirmation or other communication, the above addresses are hereby recognized as the correct addresses to which any notification under this Agreement may properly be served.

### 1. Contract Route

As per BCI TC – Baltic Capesize Index Average of Routes (8/9/10/11) as defined on the Contract Date including any relevant official forthcoming amendments published at the Contract Date which will become effective prior to the settlement of this Agreement.

### 2. Contract Rate

USD 72000.00 per Day

### 3. Contract Quantity

45.5 Days

### 4. Contract Months

April 2007, May 2007, June 2007

### 5. Contract Period

Average of All BCI index days of the contract month(s) up to and including the Settlement date(s)

### 6. Settlement Date

The last Baltic Exchange Index publication day of each Contract Month

### 7. Settlement Rate

(a) The Settlement Rate shall be the average of the rates for the Contract Route(s) published by the Baltic Capesize Index over the Settlement Period defined as All of the Baltic Capesize Index publication days of the Contract Month(s) up to and including the Settlement Date.

(b) If for any reason the Baltic Capesize Index cannot provide any rate required for establishing the Settlement Rate, then the current chairman of the FFABA may be instructed by either party to form a panel comprising of a minimum of three independent brokers (the "Panel") to determine an appropriate rate, which determination will be final and binding on both parties.

(c) Each party shall bear its own costs and expenses in connection with any determination made pursuant to this clause 7.

(d) The parties shall severally indemnify and hold harmless each of the members of the Panel, the Baltic Capesize Index and its members and the FFABA and its members (the "Indemnified Persons") against all liabilities, actions, demands,

Trade Ref    185711

costs and expenses incurred by any of them arising directly out of or in connection with the formation of the Panel and any determination made by the Panel.

(e) As between the parties, each party shall have a right of contribution against the other party in respect of any indemnity payment made pursuant to the preceding paragraph so that their respective liabilities pursuant to that paragraph shall be equal.

## 8. Settlement Sum

The "Settlement Sum" is the difference between the Contract Rate and the Settlement Rate multiplied by the Contract Quantity. If the Settlement Rate is greater than the Contract Rate, the Seller shall pay the Buyer the Settlement Sum. If the Settlement Rate is less than the Contract Rate, the Buyer shall pay the Seller the Settlement Sum.

## 9. Payment Procedure and Obligations

(a) Payment of the Settlement Sum is due on the later of two (2) London business days after presentation of payee's invoice (with complete payment instructions) or (5) London business days after the Settlement Date and for this purpose a "London business day" means a day (other than Saturday or Sunday) on which commercial banks are open for business in London. The Settlement Sum will be deemed "paid" when it has been received into the bank account designated by the payee.

(b) Payment of the Settlement Sum shall be made telegraphically, in full, in United States dollars. The cost incurred in effecting payment shall be for the account of the payer. Payment may only be affected directly between parties. The Settlement Sum shall be paid without any deduction or set off unless agreed by the Buyer and Seller in writing.

## 10. ISDA Master Agreement

This Agreement incorporates by reference the 1992 ISDA Master Agreement (Multicurrency - Cross Border) (without Schedule) as if it were fully set out in this Agreement and with only the following specific modifications and elections:

(a) Section 2(c)(ii) shall not apply so that a net amount due will be determined in respect of all amounts payable on the same date in the same currency in respect of two or more Transactions;

(b) Seller is the Calculation Agent;

(c) The most current published set of ISDA ® Commodity Definitions and ISDA Definitions shall apply;

(d) Credit Event Upon Merger is applicable to both parties;

(e) For the purposes of payments on Early Termination, Loss will apply and the Second Method will apply;

(f) The Termination Currency is United States dollars;

(g) The Applicable Rate shall mean the one month USD-LIBOR plus 2%, reset daily and compounded monthly ; and

(h) Local Business Day or banking day shall each refer to such a day in London,

(such form, as modified, the "Standard Agreement" and this Agreement, including the incorporated Standard Agreement,

Trade Ref    185711

shall govern the transaction referred to in and constituted by this Agreement except as expressly modified by this Agreement.

## 11. Capacity and Good Standing

In addition to the representations contained in Section 3 of the Standard Agreement, each party warrants that:

(a) It is duly organized and validly exists under the jurisdiction of its organization or incorporation, and is solvent and in good standing;

(b) It has the power to execute, deliver and perform this Agreement;

(c) All governmental and other consents that are required to have been obtained by it with respect to this Agreement have been obtained and are in full force and effect and all conditions of any such consents have been complied with;

(d) In the event that either party to this Agreement is a person organized under, domiciled in, or having principle place of business in, the United States, each party represents to the other party that it is an "eligible contract participant" as defined in paragraph 1a(12) of the Commodity Exchange Act (7 U.S.C. paragraph 1a(12), as amended).

## 12. Telephone Recording

Each party consents to the recording of telephone conversations in connection with this Agreement.

## 13. Commission

Each of the parties agrees to pay brokers' commission to any broker (a "Broker") as agreed with any Broker.

## 14. Non-Assignability

Except as provided in Section 7 of the Standard Agreement, this Agreement is non-assignable unless otherwise agreed in writing between the parties to this Agreement.

## 15. Principal To Principal

This is a principal to principal contract with settlement directly between the two parties. Both parties agree that any Broker shall be under no obligation or liability in relation to this Agreement. Both parties agree jointly and severally to indemnify and hold harmless any Broker against all actions, including but not limited to all claims, demands, liabilities, damages, costs and expenses both from the two parties and any third party. Claims, demands, liabilities, damages, costs and expenses suffered or incurred are to be settled directly by or between the two parties.

## 16. Law and Jurisdiction

Pursuant to Section 13(b) of the Standard Agreement, this Agreement shall be governed by and construed in accordance with English law and shall be subject to the exclusive jurisdiction of the High Court of Justice in London, England. The terms of Section 12(e) of the Standard Agreement notwithstanding, proceedings may be validly served upon either party by sending the same by ordinary post and/or by fax to the addresses and/or fax numbers for each party given above.

## 17. Entire Agreement

This Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings with respect thereto.

## 18. Payment Account Information

For Seller:
BANK NAME: HSBC Hong Kong
BANK ADDRESS: 1 Queen's Road Central, Hong Kong
A/C NO: 517-088388-838
SWIFT CODE: HSBCHKHHHKH IN FAVOUR OF: SPOT
ON SHIPPING LIMITED

For Buyer:
HSBC Bank plc
93 Akti Miaouli Street
Piraeus
Greece
Account: 001-012244,036
Swift: MIDLGRAAA
In favour of: Brave Bulk Transport Limited
Corr. bank: HSBC Bank plc - New York
Swift code: MRMDUS33

## 19. Third party rights

(a) Unless provided to the contrary in this Agreement, a person who is not a party to this Agreement has no rights under the contract (Rights of Third Parties) Act 1999 to enforce or enjoy the benefit of any term of this Agreement.

(b) Any Indemnified Person and any Broker shall have the right to enjoy the benefit of and enforce the terms of clause 7(d) in the case of any Indemnified Person and clause 13 in case of any Broker.

(c) Notwithstanding any term of this Agreement, the consent of any person who is not a party to this Agreement is not required to rescind or vary this Agreement.

## 20. Inclusion of historical FFAs under Master Agreement

(a) Unless the parties to this Agreement specifically agree otherwise in writing, this clause 20 shall apply in accordance with its terms.

(b) This clause 20 applies to this Agreement and every other agreement entered into between parties to this Agreement (and no other persons) before the date of this Agreement:

(i) that expressly stated to be subject to, or is subject to substantially the same terms as, either the FFABA 2000 terms or the FFABA 2005 terms, (excluding for the avoidance of doubt terms as to the Contract Route(s), Contract Rate, Contract Quantity, Contract Month(s), Contract Period and Settlement Date), with or without amendment; and

(ii) that does not incorporate a clause substantially in the same form as this clause 20.

(c) Each agreement to which this clause 20 applies shall be treated as a confirmation (each a "Confirmation") under a master agreement (the "Master Agreement") constituted by the Standard Agreement as modified by, and in the form as incorporated in, the Agreement pursuant to clause 10 as if such an agreement has been entered into between parties on the terms of the Master Agreement on the date of the first such Confirmation.

Trade Ref    185711

(d) If there is any inconsistency between the provisions of any agreement constituted pursuant to paragraph (c) above and the agreement constituting a transaction to which this clause 20 applies, the provisions of the agreement constituting the transaction to which this clause 20 applies will prevail for the purposes of the transaction under such agreement.

(e) This clause 20 shall not affect the rights or obligations of the parties under any transaction accrued before the date of this Agreement.

(f) This clause 20 is effective notwithstanding any entire agreement clause or similar provision in any such agreement relevant to any such transaction.

21. Inclusion of subsequent FFAs under Master Agreement

(a) Unless the parties to this Agreement specifically agree otherwise in writing, this clause 21 shall apply in accordance with its terms.

(b) This clause 21 applies to every agreement entered into between the parties to this Agreement (and no other persons) after an agreement incorporating a Master Agreement (as defined in and pursuant to a clause substantially in the same form as and equivalent to clause 20) has been entered into by them.

(c) This Agreement shall constitute a Confirmation under the Master Agreement on the terms of clauses 20 (c), (d), (e) and (f) as if they were incorporated and fully set out in this clause 21 with appropriate and necessary modifications for such incorporation.

Trade Ref    185711

Signed for the Buyer by                        Signed for the Seller by
[printed name]                                 [printed name]


Duly authorised signatory                      Duly authorised signatory

Date ........................                   Date ........................

[Company Seal or Stamp]                         [Company Seal or Stamp]


Trade Ref    185711

ICAP Hyde Derivatives Ltd 2 Broadgate, London EC2M 7UR. Tel: +44(0)20 7532 4934 Fax: +44(0)20 7000 5942
Each of the Buyer and the Seller (the "counterparties") has agreed that ICAP Hyde Derivatives Limited is its broker for the sole purposes of "passing
names" and for confirming the details of the transaction set out above in accordance with accepted market practice. ICAP Hyde Derivatives Limited has
arranged the transaction as name passing or introducing broker. Nothing in the transaction shall create any fiduciary or agency relationship between
ICAP Hyde Derivatives Limited and either of the counterparties. Each of the counterparties agrees that no reliance has or may be placed by either of
them on any representation made by ICAP Hyde Derivatives Limited, its directors, employees or agents. ICAP Hyde Derivatives Limited is not responsible
for the provision of advice to any person in connection with the transaction. It is also not responsible for the exercise of any options. ICAP Hyde
Derivatives Limited is not responsible for any other obligation or liability arising under the transaction and is not liable for the capacity, reliability, or
performance of the counterparties with regard to the transaction; in particular, ICAP Hyde Derivatives Limited accepts no liability for the commercial
advisability of the transaction. ICAP Hyde Derivatives Limited is not responsible for the failure by either of the above-named counterparties or any other
person in supplying relevant information relating to the transaction, in properly documenting the transaction or in satisfying any legal requirements or
taxation issues or conditions in relation thereto, including, without limitation, the obtaining of any necessary consents or the failure for whatever reason
of completion of such transaction. Transaction times are available on request. ICAP Hyde Derivatives Limited is authorised and regulated by the
Financial Services Authority. The transaction is subject to English law.

Please advise ICAP Hyde Derivatives Limited immediately if the details of this confirmation differ from your understanding.

Trade Ref    185711

# EXHIBIT 2

berwin leighton paisner

our ref     DHUG/ECSN/25442/1
your ref
ddi         020 7760 4968
e-mail      Edward.Coulson@blplaw.com

The Registry and Issue Section                                         18 March 2008
High Court of Justice
Commercial Court
Strand
London
WC2A 2LL

**By hand**

Dear Sirs

**Brave Bulk Transport Limited  v Spot On Shipping Limited**

We are the solicitors acting for Brave Bulk Transport Limited, who propose to issue proceedings against Spot On Shipping Limited.

Before issuing proceedings, our client wishes to obtain the permission of the court to serve the claim form and particulars of claim out of the jurisdiction, in the British Virgin Islands and in Hong Kong. We enclose an application notice, draft order granting permission to serve out of the jurisdiction and a witness statement and bundle of documents in support of the application.

Please would you pass this to the relevant Judge or Master.

Please contact Edward Coulson at this firm on 020 7760 4968 if you have any queries in relation to the above.

Yours faithfully

**Berwin Leighton Paisner LLP**

sao\6353394.1

L  O  N  D  O  N    ·    B  R  U  S  S  E  L  S    ·    P  A  R  I  S    ·    S  I  N  G  A  P  O  R  E

Berwin Leighton Paisner LLP is a limited liability partnership registered in England and Wales (registered number OC315919) and is regulated by the Solicitors Regulation Authority. A list of members of Berwin Leighton Paisner LLP and of the non-members who are designated as partners is open to inspection at the above registered office. The term partner is used to refer to a member of Berwin Leighton Paisner LLP or an employee or consultant with equivalent standing and qualifications. The members are either solicitors or registered foreign lawyers.

## Application Notice

- You must complete Parts A and B, and Part C if applicable
- Send any relevant fee and the completed application notice to the court with any draft order, witness statement or other evidence
- It is for you (and not the court) to serve this application notice

| IN THE HIGH COURT OF JUSTICE QUEEN'S BENCH DIVISION COMMERCIAL COURT ROYAL COURTS OF JUSTICE | |
|---|---|
| Claim No. | |
| Warrant no. (if applicable) | |
| Claimant(s) (including ref.) | Brave Bulk Transport Limited 147/1 St Lucia Street Valletta Malta<br><br>ECSN/DHUG/25442.1 |
| Defendant(s) (including ref.) | Spot on Shipping Limited c/o Offshore Incorporation Limited Offshore Incorporations Centre PO Box 957 Road Town Tortola British Virgin Islands |
| Date | 18 March 2008 |

**You should provide this information for listing the application**

Time estimate          (hours)          (mins)

Is this agreed by all parties? Yes ☐   No ☐

Please always refer to the Commercial Court Guide for details of how applications should be prepared and will be heard, or in a small number of exceptional cases can be dealt with on paper.

### Part A

1. Where there is more than one claimant or defendant, specify which claimant or defendant

(1) The claimant

Brave Bulk Transport Limited

2. State clearly what order you are seeking (if there is room) or otherwise refer to a draft order (which must be attached)

(2) intend(s) to apply for an order (a draft of which is attached) that

the claimant has permission under CPR Rule 6.20 to serve the Claim Form, Acknowledgement of Service and Notes for the Defendant on Replying to the Part 7 Claim Form (Commercial Court) on the Defendant out of the jurisdiction at (1) Offshore Incorporations Limited, Offshore Incorporations Centre, PO Box 957, Road Town, Tortola, British Virgin Islands (by delivery to the address) and (2) Room 1818-1823, 18th Floor, Sun Hung Kai Centre, No. 30 Harbour Road, Wanchai, Hong Kong (by post and fax).

3. Briefly set out why you are seeking the order. Identify any rule or statutory provision

(3) because

the defendant's registered office is situated in the British Virgin Islands, it is a term of the contract that service may be effected by post and/or fax at the Hong Kong address, and the claim falls within the following paragraphs of CPR Rule 6.20: (a) the claim is made in respect of a contract where (i) the contract is governed by English law (CPR Rule 6.20(5)(c)) and/or (ii) the contract contains a term to the effect that the court shall have jurisdiction to determine any claim in respect of the contract (CPR Rule 6.20(5)(d)). The claimant believes its claim has a reasonable prospect of success.

The court office at the Admiralty & Commercial Registry, Royal Courts of Justice, Strand, London WC2A 2LL is open from 10am to 4.30pm Monday to Friday.
When corresponding with the court please address forms or letters to the Clerk to the Commercial Court and quote the claim number.

N244(CC) Application Notice (4.99)                    © Crown Copyright                    Laserform International 12/07

## Part B

(1) (The claimant) wishes to rely on:

*tick one:*

the attached (witness statement)(affidavit) ☑    (1) (the claimant)(the defendant)'s statement of case ☐

evidence in Part C overleaf in support of this application ☐

| Signed | | Position or office held (if signing on behalf of firm, company or corporation) | |
|---|---|---|---|
| | (Applicant)('s solicitor) | | |

| 4. If you are not already a party to the proceedings, you must provide an address for service of documents | (4) Address to which documents about this claim should be sent (including reference if appropriate) | | if applicable | |
|---|---|---|---|---|
| | Berwin Leighton Paisner LLP Adelaide House London Bridge London | | Tel. no. | 020 7760 1000 |
| | | | fax no. | 020 7760 1111 |
| | | | DX no. | 92    Chancery Lane |
| | | Postcode | EC4R 9HA | e-mail | |

Part C

Claim No. 92    Chancery Lane

(Note: Part C should only be used where it is convenient to enter here the evidence in support of the application, rather than to use witness statements or affidavits)

[1] (The claimant) wishes to rely on the following evidence in support of this application:

> Please see the attached witness statement of Edward John Coulson dated 18 March 2008.

**Statement of Truth**

*(The applicant believes) that the facts stated in this application notice are true

*I am duly authorised by the applicant to sign this statement

Full name ..................................................................................................................................

Name of *(Applicant)('s solicitor)

Berwin Leighton Paisner LLP ...........................................................................................

| Signed | | Position or office held | |
|---|---|---|---|
| *(Applicant)('s solicitor) | | (if signing on behalf of firm, company or corporation) | |

*delete as appropriate

**Date**

IN THE HIGH COURT OF JUSTICE

QUEEN'S BENCH DIVISION

COMMERCIAL COURT

BETWEEN:

Claim No. _____

BRAVE BULK TRADING LIMITED

Claimant

- and-

SPOT ON SHIPPING LIMITED

Defendant

_____

ORDER

_____

UPON READING the written evidence filed on behalf of the Claimant

IT IS ORDERED THAT:

1    The Claimant has permission to serve the Claim Form herein on the Defendant out of the
     jurisdiction at (i) c/o Offshore Incorporations Limited, Offshore Incorporations Centre, PO
     Box 957, Road Town, Tortola, British Virgin Islands (by delivery to the address), and at (ii)
     Room 1818-1823, 18th Floor, Sun Hung Kai Centre, No. 30 Harbour Road, Wanchai, Hong
     Kong (by post and by fax +852 3667 9096).

2    The Defendant files an Acknowledgment of Service or Admission within 31 days of service
     of the Claim Form.

3    The Defendant files a Defence within 45 days of service of the Claim Form.

4    That there be permission to apply.

5    Costs in the case.

Dated this    day of March 2008.

IN THE HIGH COURT OF JUSTICE
QUEEN'S BENCH DIVISION
COMMERCIAL COURT
BETWEEN:

Claim No. _____

**BRAVE BULK TRADING LIMITED**

**Claimant**

- and-

**SPOT ON SHIPPING LIMITED**

**Defendant**

---

**ORDER**

---

Ref: ECSN/DHUG/25442/1
Solicitors for the Claimant

*berwin leighton paisner

Berwin Leighton Paisner LLP
Adelaide House  London Bridge  London  EC4R 9HA
tel +44 (0)20 7760 1000  fax +44 (0)20 7760 1111